25 So.2d 680

## HARTLEY et al. v. ALABAMA NAT. BANK OF MONTGOMERY.

### 3 Div. 432.

Supreme Court of Alabama.

March 7, 1946.

Rehearing Denied April 25, 1946.

Williams & Busbee, of Aiken, S. C., and Rushton, Weil, Stakely, Johnston & Williams and Hill, Hill, Whiting & Rives, all of Montgomery, for appellants.

Jack Thorington and Thos. B. Hill & Wm. Inge Hill, all of Montgomery, for appellee.

SIMPSON, Justice.

This appeal arises from a contest of one item of disbursement on final settlement of the account of appellee, as administrator of the estate of Mrs. Ella Barganier, deceased.

This item is the administrator's payment of $1,000 to Dr. John A. Martin as compensation for attending court in a contest of decedent's will and rendering his professional opinion of the testamentary capacity of the testatrix.

Disallowance of the item is rested on the argument that an expert witness is entitled to no greater compensation than the ordinary witness and that the payment aforesaid was unauthorized.

Whether a physician or other expert in any art, science, trade or profession could be allowed to charge for his services as an expert witness is subject to considerable contrariety of opinion by the courts. Despite the many and diverse decisions elsewhere on the question, it seems to be res integra in this state.

This class of testimony is generally recognized as of a higher grade than the ordinary, but in respect to the necessity of giving it the difference is inconsiderable. The authorities generally agree that, like the ordinary fact witness, the expert, amenable to the process of the court, may generally be compelled to testify without payment or tender of special compensation, especially if he is on the stand, though he can-

654

not be compelled to make special preparation for the giving of expert testimony. Alabama recognizes this rule. Ex parte Dement, 53 Ala. 389, 25 Am.Rep. 611.

But, otherwise, the mode and measure of the expert's compensation is a matter upon which the courts entertain widely divergent views, some cases even holding that a contract to pay such witness for giving his expert opinion when, by law, he may be compelled to testify, is lacking in consideration and void against public policy. Burnett v. Freeman 125 Mo.App. 683, 103 S.W. 121; Thomas v. Ruhl 7 Boyce, Del., 437, 108 A. 78.

█ Corpus Juris asserts what we regard as the sounder rule, that expert services of this character may be the subject of contract upon which a recovery may be had (70 C.J. 76, § 88), citing among cases Barrus v. Phaneuf, 166 Mass. 123, 44 N.E. 141, 32 L.R.A. 619, and Birch v. Sees, 178 App. Div. 609, 165 N.Y.S. 846, which accurately support the text. See also 2 Rogers on Expert Testimony, § 193, p. 439, enunciating the same principle.

In the instant case the proof is that Dr. Martin was residing in San Antonio, Texas, and made the two trips to Alabama to attend court and testify at the request of the administrator.

The appellants were among the heirs who instituted the will contest and appellee bank was the administrator cum testamento annexo, which sought to uphold the validity of the will. There were two separate contests, the second suit having been instituted under authority of Title 61, § 64 et seq., Code 1940, by nonresidents, not parties to the first proceeding.

The pivotal question in each case related to the mental status of Mrs. Barganier and it seems to be conceded that Dr. Martin was the key witness on this matter and his testimony was of substantial weight in sustaining the efforts of the administrator in defeating the contests.

█ It is the recognized duty of a personal representative to sustain the validity of the will when a contest arises and, if performed in good faith, all reasonable expenses incurred in that behalf are chargeable against the estate and should be allowed. Powell v. Labry, 210 Ala. 248, 97 So. 707, 711; Alexander v. Bates, 127 Ala. 328, 343, 28 So. 415; Mitchell v. Parker, 227 Ala. 676, 151 So. 842; Little v. Gavin, 245 Ala. 252, 16 So.2d 873(3, 4); Henderson

v. Simmons, 33 Ala. 291, 70 Am.Dec. 590. If, therefore, the allowance to Dr. Martin is not precluded by some rule of law and was reasonable, the item is a proper charge against the estate and the decree so adjudging should be affirmed.

█ Appellants argue that the payment was illegal because of the rule in Alabama that an expert witness within the jurisdiction of the court, duly summoned, is not entitled to demand extra compensation for attending and testifying on matters of expert opinion (Ex parte Dement, supra) and by reason of our statute which provides: "A witness who is an expert in any art, science, trade or profession, may be compelled to appear and testify to an opinion, as such expert, in relation to any matter, whenever such opinion is material evidence, relevant to an issue on trial before a court or jury, without payment or tender of compensation other than the per diem and mileage allowed by law to witnesses under the same rules and regulations by which he can be compelled to appear and testify as to his knowledge of facts relevant to the same issue." Title 7, § 366, Code 1940.

The weight of authority in lines to the view expressed in the Dement case (VIII Wigmore, Evidence, (3rd Ed.), § 2203, p. 134; 2 A.L.R. 1577) and the quoted Code section is but the legislative affirmation of the principle there deduced.

█ But the case before us is different for the reason that there was no effort to compel Dr. Martin to attend court as a witness and in fact he was beyond its jurisdiction and was not subject to subpoena or the compulsion of the court in this regard. Furthermore, whether or not such witness, when not so compelled, may stipulate for payment for rendering an expert opinion is not imminent in the Alabama rule as so far promulgated and the rule is without controlling influence.

This case is where a witness, without compulsion and beyond the jurisdiction of the court, upon request of a party appears and testifies as an expert on matters material to the issues involved.

In these circumstances, it is our view that the rule of compulsion to testify adverted to above does not bar the right to extra remuneration and a contract to pay the witness for attending and testifying would be valid and should be upheld. It is a service which the law has not compelled him to give as a witness, free of charge or for the

statutory fees, and the amount of payment, therefore, is not ruled by the same principle as a witness within the jurisdiction of the court who has been duly summoned and has appeared and testified in response thereto.

The rule of compulsion heretofore referred to is grounded on the theory that it is part of the duty of every citizen of the community to give his services in testifying in any court proceeding when properly summoned to perform that duty and, when so summoned, for him to refuse to testify without extra pay is a contempt of court. Consonant with this theory some courts have held that any agreement for such extra compensation is unenforceable. The rule is sometimes grounded upon the premise that such a promise is without consideration, the promise to testify being merely to perform that which the law has required of the witness, but the majority of the cases holding to this theory seem to rest it upon the ground that such contract is against public policy. 16 A.L.R. 1458.

The principle, though, when applicable, is predicated upon the correlative duty of the citizen toward the community to aid in the dispense of justice and the corollary power of the court to coerce that duty and the reason for the rule and logic of position both fall when the status is different, as here where the witness was neither amenable to summons nor had been compelled to appear and testify.

It is established that the compulsion does not extend to expert opinions where the testimony is of a nature which requires special preparation, research or examination of any kind necessary to properly equip the witness to testify, in which case he cannot be compelled to perform such preparatory work, regarded in the nature of professional services, without the payment of a professional fee; and, if performed by request of a party without an express promise of compensation, extra compensation may be recovered on an implied promise. VIII Wigmore, Evidence (3rd Ed.), § 2203, p. 135; 70 C.J. 76, § 87.

The principle is also recognized that even as to a matter-of-fact witness, not subject to process of court because beyond its jurisdiction, a contract to pay him a sum in excess of the statutory fees for attending and testifying is enforceable. Armstrong v. Prentice, 86 Wis. 210, 56 N.W. 742; see also 16 A.L.R. 1461, Note c.

The text is noted in 16 A.L.R. 1463 that, "if the service required of the expert is such that he cannot be compelled to render it under the ordinary process of the court, an agreement by the one seeking the service, to compensate the expert for it, is valid."

And, of course, an implied contract would be as binding and enforceable as one expressed, for "if such services are performed on the request of a party to the action without an express promise of compensation, extra compensation may be recovered on an implied promise." 70 C.J. 76, § 87.

The fact then that there were no express arrangements for the doctor's compensation is not of much moment. His personal appearance was requested by the administrator, to which he responded and appeared and testified, thus absenting himself from his duties at his then residence in Texas as well as undergoing probable expense and inconvenience to himself in making the two trips to Alabama. If entitled to special compensation, the absence of an express agreement for it is of no consequence, since he appeared at the administrator's request, justifying payment on the basis of an implied contract. 70 C.J. 76, § 87.

The rationale in Barrus v. Phaneuf, 166 Mass. 123, 44 N.E. 141, page 142, 32 L.R.A. 619, a case similar in pertinent aspects to this one, is apposite of our view, and we quote from it as follows: "It would seem that one who is summoned as an expert would perform all that the court could require of him if he should hold himself in readiness to be called upon to testify to such opinions as he might have when his turn should come. People v. Montgomery, N.Y., 13 Abb.Prac., N.S., 207. Flinn v. Prairie County, 60 Ark. 204, 29 S.W. 459 [27 L.R.A. 669, 46 Am.St.Rep. 168]. If a party is content to rest upon his legal rights, and to summon the expert whose testimony he wishes to have, and to pay the statutory fees, without any previous engagement or understanding with him, and to take his chance of being able to get an attachment to bring the witness into court in case he should fail to appear, and if he thus succeeds in getting the testimony which he wishes, and afterwards refuses to pay any special compensation, the question might be directly presented whether the witness would be entitled to recover anything on a quantum meruit. That question does not arise here. The questions here are whether there was any sufficient consideration for

656

an express or implied promise to pay, and whether there was sufficient evidence of an engagement by him to testify as an expert, upon request, which might imply a promise by the defendant to pay him as an expert."

It would seem sound to hold therefore that a nonresident, as Dr. Martin was, who, without court process but voluntarily at the request of a party to the cause—the appellee which seeks to have the payment for his services validated—appears as a witness at expense and probable inconvenience to himself and gives expert testimony on a vital matter, should be entitled to reasonable compensation for such services on the theory of an implied contract, without offending the rule of public policy.

We do not think it reasonable, nor the law, that a physician of note and skill, resident in San Antonio, Texas, who, without subpoena, upon request of a party absents himself from his duties there, to attend court in Alabama, and gives important testimony of an expert nature in behalf of such party, should be expected to receive only that compensation allowed ordinary fact witnesses, nor that he should be denied the right of payment of a reasonable compensation from the party requesting his attendance on the basis of an implied contract.

 The case of Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386, cited by appellants as sustentive of their position, is inapposite. There is practically unanimity of authority in this country that compensation of experts cannot be allowed and taxed against the parties as costs in litigation unless so provided by statute. Am.L. Rev., 1925, LIX 266, Compensation of Expert Witnesses, by Charles S. Lobingier. The Henkel case merely holds, in line with this current of opinion, that since the federal statute prescribes fully the amounts payable to witnesses, additional amounts as compensation or fees to expert witnesses cannot be allowed or taxed as costs in the federal court, though permitted by law in the state where the cause was tried.

 It is also argued that payment of the item should be disallowed because Dr. Martin would, assertedly, be estopped to claim any pay in either of the cases because, in his testimony in the first case on cross-examination, he stated that he came to Montgomery voluntarily because it was home (he was then in the Army, stationed at Randolph Field, Texas), that no arrangements had been made for his compensation and that he was "taking care" of his own way.

Manifestly, whatever its effect, the statement concerned only the appearance of the doctor at the first trial and was without influence as to compensation payable for future services in a second trial, not then contemplated.

And as to its import on the first trial we are unwilling to accord to the statement the effect contended for by appellants. While it might have been considered by the trial court in determining whether the administrator owed the doctor for his services in attending and testifying at that trial the statement might be susceptible of a different inference, without attending it with any disclaimer of right to be compensated, as that simply no arrangements had then been made for his compensation, so he had paid his own way. It obviously would not warrant the exclusive judicial conclusion, pretermitting contrary inferences by the trial court, that the witness intended to contribute, and was so donating, his time, services and expenses gratuitously, which evidently, from the conduct of the administrator in paying the bill rendered by the doctor, appeared not to have been the intention or understanding of either. This was the conclusion on the issue by the trial court, who perhaps knew both individuals and heard the administrator testify and to disturb that conclusion here would, we think, be unwarranted under the recorded facts.

 Before leaving the precise question it should be noticed that, while the courts do recognize judicial estoppel or estoppel by oath, precluding a party from taking a contradictory position in a subsequent action or proceeding to that previously assumed and holding the deponent to his previous declarations, that is not this case, and we do not regard the doctrine as applicable. Here Dr. Martin is not a party to the proceedings and did not testify therein. He has already received payment of his bill which the administrator now seeks to have approved. This case is strictly between the administrator and certain heirs of the decedent and, if the administrator was justified in making payment of the item on the basis of an implied contract as heretofore discussed, the statement referred to could not be raised as an estoppel against it in this proceeding.

It has already been said that for the implied contract to be valid and sustainable in court the compensation must be shown to have been reasonable. There was here an entire absence of this element of proof to sustain such contract and the order of the trial court adjudicating the services as reasonable is without foundation. In this we think there was error which necessitates a reversal of the cause.

If the item were a matter of common knowledge and the nature of the charge or expense were known, the sum paid might serve as some evidence of the reasonable value in the absence of proof to the contrary. Birmingham Ry., L. & P. Co. v. Humphries, 172 Ala. 495, 497, 55 So. 307.

But the same principle is inapplicable to matters not of common knowledge, as professional services now under consideration, and the law requires evidence to show what is a reasonable amount. City of Birmingham v. Norwood, 220 Ala. 497, 498(5), 126 So. 619; Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840, 844.

For this failure of proof the decree is reversed and the cause remanded.

Reversed and remanded.

BROWN, FOSTER, and LIVINGSTON, JJ., concur in opinion, and GARDNER, C. J., concurs in the result.

STAKELY, J., not sitting.