**Emmett Lee MILLER, Appellant,**

v.

**The CHEMSTRAND CORPORATION, Appellee.**

**No. 20990.**

United States Court of Appeals Fifth Circuit.

May 5, 1964.

Charles L. Howard, Jr., Rogers, Howard, Redden & Mills, Birmingham, Ala., for appellant.

William B. Eyster, John A. Caddell, John H. Moores, Eyster & Eyster, Peach, Caddell & Shanks, Decatur, Ala., for appellee.

Before CAMERON * and BELL, Circuit Judges, and INGRAHAM, District Judge.

PER CURIAM:

Emmett Lee Miller, plaintiff-appellant, sued the Chemstrand Corporation, defendant-appellee, to recover damages arising from his employment by the defendant, The Chemstrand Corporation. The complaint was predicated on four causes of action: 1) negligent failure of the defendant to use due care to furnish and provide plaintiff with a reasonably safe place in which to work resulting in injury and disability of the plaintiff when he contracted toxic hepatitis; 2) damages resulting from the breach by the defendant of a promise to pay medical expenses; 3) damages for breach by the defendant of an agreement to provide the plaintiff with employment, income, and to maintain his seniority; 4) damages resulting from breach by the defendant of an oral agreement to provide the plaintiff with a reasonably safe place in which to work and to perform his duties. In answer, the defendant pleaded, among other defenses, the Alabama one year statute of limitation. Plaintiff denied the applicability of the one year statute of limitation, further claiming that, if applicable, the defendant was estopped to plead the one year statute of limitation.

Upon oral motion of the defendant, after the plaintiff had rested his case, the district court directed a verdict for the defendant and entered judgment thereon.

This is a diversity case and we are bound by State law. The case turned upon the application of the Alabama one year statute of limitation, which was properly pleaded by the defendant. The plaintiff claimed that the defendant was guilty of fraud and therefore estopped to plead the statute of limitation.

We are of the opinion that plaintiff's cause of action was barred by the Alabama one year statute of limitation and that the testimony offered by the plaintiff does not raise the issue of fraud.

The trial judge in his opinion and order denying plaintiff's motion for new trial, which is set out in full in the footnotes,[1] reviews the matters in contention before us fully and correctly. The judgment of the district court is therefore affirmed.

---

* Judge Cameron participated in the hearing of this case, but died before this opinion was written.

1. The plaintiff has filed a motion to set aside judgment and for a new trial in this cause, which motion was heard on Thursday, May 16, 1963. Since that date the

Court Reporter has transcribed the testimony of the plaintiff Miller, which is the only part of the evidence relevant to the issues presented by the motion.

At the conclusion of the plaintiff's testimony, upon the oral motion of the defendant, the Court directed a verdict for the defendant.

One of the defenses asserted herein was the Alabama statute of limitations of one year. The case was tried before the jury on the second amended Count I, filed February 3, 1962, and on amended Counts II, III and IV, filed on January 3, 1962. The significant dates involved are as follows: Plaintiff last worked for the defendant on the 5th day of October, 1959. He was medically terminated on the 2nd day of November, 1960, effective November 9, 1960. He filed suit on November 2, 1961. Plaintiff seeks to avoid the bar of the one-year statute of limitations, based upon what he terms "an agreement" more particularly shown from the quotations from the testimony hereinafter set out. On direct examination, plaintiff testified as follows:

"Q Now, when did you first become aware of the fact, Mr. Miller, that you were developing or had toxic hepatitis, or hepatitis?

"A I believe the latter part of August.

"THE COURT: What year was that?

"A 1959.

\* \* \* \* \*

"Q On occasions in the hospital, when Mr. Hurst visited with you, and you say Dr. Payne came to see you, did you have any conversation with either or both of those gentlemen?

"A I had a conversation with both, yes, sir.

"Q And what was said, if anything, in relation to your situation?

"A Mr. Tom told me not to worry about anything, that everything would be taken care of concerning my medical bill while I was there, and the 20 per cent that the insurance didn't cover, that the company would cover.

\* \* \* \* \* \*

"A They told me I had been medically terminated.

"Q And when did they tell you that you had been medically terminated?

"A Either the 3rd or 5th.

"Q Of November?

"A Yes, sir.

"Q To refresh your recollection, was it November 2, 1960, or do you remember exactly?

"A I don't know the exact date. I know it was a week or 10 days.

\* \* \* \* \*

"A When he told me that, of course, it upset me, and I asked Mr. Hurst why I was terminated. He said the company did not feel like I would be able to work for them any more, due to my condition.

"Q Did you ask him about your payments?

"A About what?

"Q Your payments, your bills?

"A. He said that the company had taken care of all that they felt that they owed.

"Q He said at that time that they had taken care of all that they felt they owed? Is that right?

"A Yes, sir.

\* \* \* \* \*

"A Well, one of the gentlemen, Mr. Hurst, I believe, said that it had been rumored at the plant I had filed suit, and I told him, no, sir, I hadn't, not as long as they lived up to what he had told me, and that I was satisfied, and he told me, said, don't worry about nothing. Said your job and seniority is going right on.

\* \* \* \* \*

"A It was about May of 1960.

\* \* \* \* \*

"Q And what was said with reference to compensation at that time?

"A That they didn't want to enter it as a compensation case, they were going to—"

On cross examination, plaintiff established the date of the conversation at which the "agreement" was made by Mr. Hurst and Dr. Payne as having occurred before he took his vacation in April, 1960, testifying as follows:

"Q Is it not a fact—let's go back a minute to this conversation that you say occurred with you and Mr. Hurst and Dr. Payne. When is it you say that occurred, Mr. Miller?

\* \* \* \* \*

"Q What is your best judgment about it?

"A I believe it was before the two weeks vacation.

"Q You now tell me it was before the two weeks vacation that Mr. Hurst and Dr. Payne came to you and made the agreement you have just told the jury about?

"A Yes, sir. I can't remember exact dates.

"THE COURT: Do you have a judgment about it?

"A The best of my judgment would be right before my two weeks vacation.

"Q Assuming your vacation began about April 11, 1960, would it be shortly before that?

"A Yes, sir.

"Q And that's the only time such was ever mentioned to you before you were terminated, in the conversation on November 9, 1960?

"A Yes, sir.

* * * * *

"MR. EYSTER. As we have it in the company records, from April 10, 1960, for two weeks, Your Honor.

"Q Now, was that the only conversation about this?

"A That is the only time it occurred; and I told them that I hadn't even thought of such. They said it was rumored at the plant."

In April, 1960, plaintiff's sick leave was extended, and plaintiff was advised that the group insurance would take care of 80 per cent only, since he had a back condition and that the balance would have to be paid by him personally. (Tr. p. 76.) The plaintiff understood this fact. (Tr. p. 79.)

As far back as 1954 or 1955, plaintiff and other employees were advised that the chemicals which were being used could possibly cause hepatitis. (Tr. pp. 91 and 92.) Preceding the medical termination of the plaintiff and during October, 1960, he had a disc operation which had been giving him a lot of trouble in his back. The disc condition did not arise from the hepatitis, although plaintiff did testify that his back gave him trouble from overweight due to the hepatitis diet.

On re-direct examination, the plaintiff testified that he did not remember the exact dates of the visits of Mr. Hurst during 1960. The date of the latest of any conversation that plaintiff had with Mr. Hurst appears to have been in the latter part of the summer of 1960 (Tr. p. 133), at which time the plaintiff testified that Mr. Hurst asked him if he was satisfied with the arrangement, to which he replied:

"Mr. Hurst asked me if I was still satisfied, and I told him yes, as long as the company lived up to their agreement."

The burden of proof on the statute of limitations is upon the plaintiff. The Supreme Court of Alabama, in Lord et al. v. Calhoun, 162 Ala. 444, at 446, 50 So. 402, said:

"When the statute of limitations is pleaded, the burden rests upon the plaintiff to prove the cause of action within the period of the bar. In each case the plaintiff must show facts which avoid the effect of the plea, and, if he relies on a parol contract, the burden is on him to establish a contract not required by the statute to be in writing."

Assuming the correctness of the plaintiff's testimony, the statute of limitations would run against the promise. Such was the holding of the Supreme Court, in Cameron v. Cameron, 95 Ala. 344, at 347, 10 So. 506, at 507, where the plaintiff relied on a promise that a bill-single (note) "would never run out of date." The Supreme Court said:

"It was only a promise not to plead the statute of limitations, and the statute runs against that promise as well as against the bill single itself."

Unless the promise was to run to a certain date, such promise was no different from, as respecting the statute of limitations, a note payable on demand, which accrues when made. North Birmingham American Bank v. White, 225 Ala. 72, 142 So. 47.

The plaintiff testified very positively, after being pinned down on cross-examination, that he only had one conversation with Dr. Payne and Mr. Hurst and that that was before he went on his vacation in April, 1960. Even taking the date as of late summer, 1960, a year expired before the suit was filed, and from the evidence it appears that all that was said on the latter date was whether the plaintiff was satisfied with the arrangement. There was nothing to show that there was any promise made at that time.

The plaintiff contends that the defendant was guilty of fraud or was equitably estopped to plead the statute. He relied on Section 42, Title 7, Alabama Code of 1940, which provides:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

According the most favorable construction of plaintiff's testimony, that testimony does not establish fraud. At most, there was just a promise to look after the welfare of the plaintiff while he was sick. In the Court's opinion, fraud cannot be read into the acts of the defendant, assuming that Dr. Payne and Mr. Hurst had authority to speak for the defendant. It was to meet just such contentions that the legislature enacted Section 40 of Title 7, Code of Alabama of 1940, which provides as follows:

"No act, promise, or acknowledgment is sufficient to remove the bar to a suit created by the provisions of this chapter, or is evidence of a new and continuing contract, except a partial payment made upon the contract by the party sought to

be charged before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby."

In Whitfield v. Hatch et al, 235 Ala. 38, 40, 177 So. 149, the Supreme Court of Alabama, referring to this section, said: "This statute is clear and unequivocal; says what it means and means what it says. It is of long standing first appearing in the Code of 1852, § 2490. Jordan's Adm'r v. Hubbard, 26 Ala. 433, 438. "It was intended not only to clarify the law, theretofore much in confusion, touching the words or acts which would constitute such new promise, express or implied, as to intercept the running of the statute of limitations, but also to specify the admissible evidence."

In Warren v. Hearne, 82 Ala. 554, 556, 2 So. 491, 493, the Supreme Court of Alabama said: "All acts, promises, and acknowledgments, other than therein expressed, the statutes declare insufficient; and it is not our province to extend it, by construction, beyond the clearly expressed terms."

It is true that the company continued to pay the plaintiff sick leave, but such was not a partial payment made upon a contract, which is the only exception to removal of the bar by an "act". There is no dispute in the evidence that there was no promise in writing of any kind. There was no attempt to conceal any cause of action from the plaintiff or to misrepresent any facts to him. He knew that he had a right to file suit as far back as October 5, 1959.

In Lewis v. Ford, 67 Ala. 143, 146–147, the Court, referring to Section 40, said: "Where such is the case, we consider it settled, both by weight of respectable authority and of sound reason, that no mere verbal promise, express or implied, to waive, or not to plead the statute of limitations can be valid. This would be to suspend the statute by another act or promise than that specified by the lawmaking power, which would be against the policy of the statute itself, and not, for this reason permissible. Shapely [Shapley] v. Abbott, 42 N.Y. 443 (1 Amer.Rep. 548.)

"Besides, an estoppel in pais must relate to some matter of fact, which has been previously admitted or denied by the party claimed to be stopped, which he is precluded from averring to the contrary, on the ground that his conduct has deceived or misled to another's injury. 1 Brick. Dig. p. 796, # 10 (cases cited.)

"Here, there is no ignorance of fact alleged, no deception practiced, no misstatement made, nor even improper silence averred, which has induced appellant to alter his previous position, to his injury. He was charged with a knowledge of the law, and must have known that his claim was barred by lapse of time. We do not hold that a party may not be estopped from pleading the statute of limitations, where there is a concealment, or misrepresentation, of a fact of which the party injured was ignorant, and by which conduct he was misled to his prejudice. * * *"

It follows that the second amended Count I, being grounded in tort, is barred by the statute of limitations of one year.

Count II, as amended, is based upon breach of promise to pay all expenses incurred as a result of plaintiff's treatments by doctors and for hospitalization. The defendant moved for a directed verdict as to this count. The Court is of the opinion that there was no proof to sustain this count. There was one bill which the Court finally admitted which purported to be a doctor's bill for $150.40. However, there was no proof of the reasonableness of the bill. Unless the value of the services is of common knowledge, the burden is on the plaintiff to establish the reasonable and proper amount of the services. Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633. The plaintiff stated he had received this bill in August, 1962. He did not pay the bill and he did not offer any evidence as to his liability to pay.

In the Norris case, supra, the Court said:

" * * * what would be a reasonable and proper charge for the surgical and medical attendance had by plaintiff was not a matter of common knowledge, but was clearly a matter for expert opinion. There being nothing in the evidence to show that the charge made was reasonable, or to show what would have been reasonable, there was no proper basis for a finding by the jury in allowance of the claims * * *."

In Hartley v. Alabama National Bank, 247 Ala. 651, 657, 25 So.2d 680, 684, an administrator, without prior contract, paid a physician $1,000 for appearing in a will contest on two occasions, giving testimony as to the sanity of the testator. An heir contested the item on final settlement. The Court said:

"It has already been said that for the implied contract to be valid and sustainable in court the compensation must be shown to have been reasonable. There was here an entire absence of this element of proof to sustain such contract.

and the order of the trial court adjudicating the services as reasonable is without foundation. In this we think there was error which necessitates a reversal of the cause. If the item were a matter of common knowledge and the nature of the charge or expense were known, the sum paid might serve as some evidence of the reasonable value in the absence of proof to the contrary. Birmingham Ry., L. & P. Co. v. Humphries, 172 Ala. 495, 497, 55 So. 307.

"But the same principle is inapplicable to matters not of common knowledge, as professional services now under consideration, and the law requires evidence to show what is a reasonable amount. City of Birmingham v. Norwood, 220 Ala. 497, 498(5), 126 So. 619; Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840, 844."

There was no attempt to prove any surgical or hospital bills, and the Court is of the opinion that the proof to the extent offered did not meet the requirements of the rule referred to, and that the verdict was properly directed as to Count II, as amended.

Count III, as amended, is based upon an alleged offer of the defendant to "always provide a job for the plaintiff and to hold the plaintiff harmless from any loss of income or seniority in his position" in consideration of plaintiff refraining from placing any suit at law against the defendant for damages; that said defendant breached said contract and the plaintiff has lost substantial income and will continue to lose income from any employment. The plaintiff's testimony, in the most favorable light, does not establish this third cause of action.

A contract, if it can be called a contract, such as pleaded in Count III, is void for uncertainty. In Birmingham Electric Co. v. Praytor, 22 Ala.App. 45, 111 So. 895, the Court stated that a contract whereby a person was employed at a definite monthly salary without specification of the length of period for the contract's continuance was void for uncertainty and no damages could be recovered thereunder by the employee. In support of its conclusion, the Court quoted the following from the Supreme Court of Alabama:

"In * * * Howard v. [East Tennessee, Va. & Ga.] Railroad Co., 91 Ala. 268, 8 South. 868, we laid down the principle that, when no breach of a contract could be assigned which could be compensated by any criterion of damages to be furnished by the contract itself, the contract is void for uncertainty." Pulliam v. Schimpf, 109 Ala. 179, 19 So. 428.

And "In Howard v. E. Tenn., Va. & Ga. R. R. Co., 91 Ala. 268, 8 South. 868, the railroad company employed the plaintiff as its land agent at a stipulated monthly salary, * * *. No period of time for its continuance was specified. It was held void for uncertainty." Christie, Lowe & Heyworth et al. v. Patton, 148 Ala. 324, 42 So. 614.

And, "Contracts may be so uncertain as to parties or subject-matter as to be incapable of specific performance, or to support an action for damages for breach thereof." Shannon v. Wisdom, 171 Ala. 409, 55 So. 102, citing Howard v. E. Tenn., Va. & Ga. R. Co., supra.

The record is wholly silent as to any loss the plaintiff has sustained or would likely sustain. Any such purported contract, in the Court's opinion, was void for uncertainty and there was an entire lack of proof of damages under the count.

The Fourth Cause of Action was based upon the breach of a contract to furnish the plaintiff a safe place to work. There is no proof whatever of any such agreement. A reading of the count reveals that the action is, in fact, based upon the breach of a legal duty. Plaintiff does not aver that there was any express or implied contract. He does aver that there was a breach of contract arising out of the breach of a legal duty. In short, this count states no more than a tort action. See Marsh v. Southern Airways, 5 Cir., 316 F.2d 91, decided April 19, 1963, wherein the Court quoted from Wilkinson v. Moseley, 18 Ala. 288, as follows:

"Perhaps the best criterion is this: if the cause of action, as stated in the declaration, arises from a breach of promise, the action is ex contractu; but if the cause of action arises from a breach of duty, growing out of the contract, it is in form, ex delicto, and case."

This being a count in tort, the statement of the Court with respect to the second amended Count I is applicable to this count. Further, there was no proof that there was any such contract entered into. The motion for a directed verdict as to this count was properly given.

Based upon the foregoing, the Court is of the opinion that the plaintiff's motion for new trial is due to be overruled.

It is, therefore, ordered, adjudged and decreed that the plaintiff's motion for new trial be and the same is hereby overruled and denied.