After a jury trial, the Madison Circuit Court entered a judgment awarding $85,000 in damages to Letitia Wyatt McAllister in her action against Lawrence H. Bundrick, Jr., M.D., under the Alabama Medical Liability Act, § 6-5-480 et seq., Ala. Code 1975. McAllister subsequently filed a motion for an award of costs pursuant to Rule 54(d), Ala. R. Civ. P., in the amount of $45,064.88. Attached to that motion was an exhibit listing charges for particular classes of cost items claimed by McAllister, including charges for "medical records," "X-ray copies," "professional fees," "expert witness fees," "court costs" (such as filing and subpoena fees), "depositions," "investigative services," "travel expenses," and "trial exhibits." Dr. Bundrick opposed the motion for an award of costs, filing two briefs contesting various specific items and generally challenging the sufficiency of McAllister's motion. McAllister then filed an "evidentiary submission" in support of her motion, and Dr. Bundrick filed a motion to strike that submission.
After considering the parties' submissions, the trial court entered an order taxing *Page 866 
as costs all of the expenses identified by McAllister with the exception of "travel expenses" in the amount of $1,189.25, certain expenses for trial exhibits totaling $4,078.26, and certain professional fees totaling $1,465. Although the trial court ordered Dr. Bundrick to pay costs "in the amount of $38,332.87," the claimed expenses remaining after subtracting the expense items disallowed by the trial court actually total $38,332.37, i.e., 50 cents less than the amount awarded.
Dr. Bundrick has appealed from the trial court's order awarding costs. "[A] party aggrieved by an award of costs may appeal the propriety of such an award, even where the merits of the underlying case are not before the appellate court." Garrett v.Whatley, 694 So.2d 1390, 1391 (Ala.Civ.App. 1997) (citing Cityof Birmingham v. City of Fairfield, 396 So.2d 692, 694 (Ala. 1981)). However, our review of a trial court's order taxing costs pursuant to Rule 54(d) is limited to determining whether "a clear abuse of discretion" is present. Garrett, 694 So.2d at 1391.
Dr. Bundrick contends generally that the trial court abused its discretion in awarding any costs (other than "court costs" of $592.63, representing the filing fee and the trial court clerk's subpoena fees, that he does not contest on appeal) because they were "not substantiated by any competent evidence." Specifically, he argues that the documents attached to McAllister's supplemental submission were not "authenticated" pursuant to Rule 901, Ala. R. Evid.[1] We disagree. Each cost item alleged by McAllister and allowed by the trial court was supported by an official reporter's certificate (as to deposition costs) or law-firm checks representing payment of, and corresponding invoices evidencing, all other claimed expenses. Rule 901(b)(4), Ala. R. Evid., indicates that the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," will suffice to demonstrate that a document is what its proponent claims it to be. We therefore conclude that the trial court could have deemed McAllister's "evidentiary submission" in support of her motion for an award of costs sufficiently authenticated despite Dr. Bundrick's objection thereto.
We now turn to Dr. Bundrick's challenges to specific cost items allowed by the trial court. Dr. Bundrick contends that the trial court should not have awarded $20,600.02 that McAllister claimed as "deposition costs." We note that under Ala. Code 1975, §12-21-144, as interpreted by our Supreme Court in Ex parteStrickland, 401 So.2d 33 (Ala. 1981), a trial court may, in its discretion, tax all of the costs of any deposition taken in a case, regardless of whether the deposition was used at trial, if the deposition was reasonably necessary. *Page 867 
In this medical-liability action, the parties took a number of depositions, including several videotaped depositions, of expert and other witnesses. By necessity, the services of the people who transcribed and recorded those depositions (and, in one instance, attended a scheduled videotaped deposition that was cancelled)[2] qualify as "costs" of those depositions. Likewise, the weight of authority indicates that the reasonable necessity of editing services with respect to depositions taken using videographic media is a matter for the trial court to determine. See United Int'l Holdings, Inc. v. The Wharf(Holdings) Ltd., 174 F.R.D. 479, 483 (D.Colo. 1997) (finding editing costs to be "part and parcel" of court-reporting fees with respect to deposition); 8A Charles A. Wright, Arthur R. Miller Richard L. Marcus, Federal Practice Procedure: Civil
§ 2115, pp. 119-120 (2d ed. 1994) ("the better view [is that] a videotape is regarded as a deposition-related expense . . . so that the party may recover as costs the full amount for videotaping and showing the testimony"); compare Unif. Audio-Visual Deposition Act § 5, 12 U.L.A. 51 (1996) (reasonable expenses of recording, editing, and using an audio-visual deposition "may be taxed as costs").
The trial judge, who was present during the trial and witnessed the parties' presentations and arguments, is, in our view, in a far better position to determine the reasonable necessity of a particular deposition than an appellate court, especially where, as in this case, the full trial transcript does not appear in the record on appeal. We will therefore not disturb the award of costs to the extent that it taxed to Dr. Bundrick the amounts claimed by McAllister that represent charges assessed by stenographers and videographers for services rendered with respect to the depositions taken by the parties (i.e., $11,363.61).
On the other hand, we cannot conclude that all of the items classified by McAllister as "deposition costs" are allowable under Alabama law. Specifically, there are several items listed as "deposition fees" that are actually fees that McAllister paid to various expert witnesses in consideration for giving deposition testimony.[3] In addition to these items, which total $8,788.76, McAllister separately sought, and was awarded, $13,650 in "expert witness fees" with respect to charges assessed by Dr. Charles Vinnik, Dr. Steven Dick, and Dr. Rekha Vankineni for "professional fees," "professional services," "review" fees, and conferences, as well as $400 in "professional fees" charged by Dr. Carol Walker.
As Dr. Bundrick correctly notes, our Supreme Court held in 1946 that "[t]here is practically unanimity of authority in this country that compensation of experts cannot be allowed and taxed against the parties as costs in litigation unless so provided by statute." Hartley v. Alabama Nat'l Bank of Montgomery,247 Ala. 651, 656, 25 So.2d 680, 683 (1946); accord, Garrett, 694 So.2d at 1391-92 (applying Hartley in reversing award of expert-witness fees while *Page 868 
noting that workers' compensation actions present exception to the rule stated in Hartley). While we are not unsympathetic to McAllister's contention that the expert-witness fees she has incurred are representative of the relatively high costs of prosecuting an action under the Alabama Medical Liability Act, neither the legislature nor our Supreme Court has seen fit to allow such fees to be recovered, and we must therefore conclude that the trial court abused its discretion in failing to exclude those items (which amount to $22,838.76) from its award of costs.
Finally, we address the remaining items that were claimed as taxable costs by McAllister that Dr. Bundrick has challenged on appeal. We cannot conclude that the trial court abused its discretion to the extent that its award of costs directs payment to McAllister of the costs she incurred in reproducing depositions, X-ray images, and other medical records that were used as exhibits and illustrations. Copying expenses have been recognized by the Alabama Supreme Court as appropriate for reimbursement. See Lewis, Wilson, Lewis Jones, Ltd. v. FirstNational Bank, 435 So.2d 20, 23 (Ala. 1983). Those expenses that were listed by McAllister as "medical records," "X-ray copies," and "trial exhibits," as well as the $447.65 expense claimed under "depositions" for photocopies, were therefore proper costs; those expenses amounted to a total of $2,697.62.
However, McAllister has provided no authority under Alabama law, and we are aware of none, that would support the taxing to Dr. Bundrick of a $839.75 charge paid by McAllister for expenses incurred by private investigators that undertook service of various subpoenas on behalf of McAllister. Under current federal law, fees assessed by private process servers are taxable as costs only to the extent that a government official may charge a similar fee for performing the same duty. See EEOC v. W O,Inc., 213 F.3d 600, 624 (11th Cir. 2000) (vacating trial court's award of process-server fees as costs and remanding for determination whether requested fees "are commensurate with" statutory fees permitted to United States marshals for service). Although the Alabama Code specifies that the clerk is to be paid an $8 fee for issuing a subpoena in a civil case (see §12-19-74, Ala. Code 1975), we have been directed to no authority from which we can conclude that any fee is properly assessed under Alabama law in a medical-liability action[4] for theservice of a subpoena. We therefore conclude that the trial court abused its discretion in failing to except the "investigative services" fees claimed by McAllister from its award of costs.
Based upon the foregoing facts and authorities, we conclude that $14,653.86 of the amount taxed by the trial court to Dr. Bundrick as costs pursuant to Rule 54(d), Ala. R. Civ. P., was proper. However, items representing expert-witness fees incurred by McAllister in the amount of $22,838.76 and representing "investigative services" fees for service of process in the amount of $839.75 are not properly taxable under Alabama law to Dr. Bundrick. The trial court's order taxing costs is therefore reversed, and the cause is remanded for *Page 869 
the trial court to tax costs to Dr. Bundrick in the amount of $14,653.86.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
[1] We note that Dr. Bundrick does not rely upon those portions of the Alabama Rules of Evidence pertaining to hearsay (see
Rule 801 et seq., Ala. Code 1975) as a separate basis for challenging the propriety of McAllister's submissions in support of her motion for costs; rather, he contends solely that those submissions were unauthenticated under Rule 901. "When an appellant fails to argue an issue in its brief, that issue is waived." Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982). However, we caution the Bench and Bar that under Rule 803(6), Ala. R. Evid., for records of regularly-conducted activities to be admissible in evidence for the truth of the matters stated therein, "the proponent must call a witness to lay the prescribed foundation," i.e., "that the record was kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make the record." Rule 803, Ala. R. Evid., Advisory Committee's Notes (emphasis added).
[2] See Papas v. Hanlon, 849 F.2d 702, 704 (1st Cir. 1988) (affirming judgment taxing "no-show deposition costs" as incidental court-reporting fees).
[3] These include a $900 fee payment to "The Clinic for Neurology" for the deposition of Dr. Lee McDaris, fees of $1,000 and $1,013.76 paid to Dr. Carol Walker, a $2,000 fee paid to Dr. Charles Vinnik, fees of $600 and $375 paid to "Alabama Gastroenterology" for the deposition of Dr. Rekha Vankineni, a fee of $500 paid to "North Alabama Neurological" for a deposition of Dr. Joel Pickett, a fee of $1,500 paid to "North Alabama Neurology" for a videotaped deposition of Dr. Pickett, and a fee of $900 paid to Dr. Jeff Creasy.
[4] Although we affirmed an award of costs in Rayford v.Rayford, 456 So.2d 833 (Ala.Civ.App. 1984), that included an allowance for expenses of a private investigator who was retained by a custodial parent to track down a noncustodial parent who had absconded with the parties' children, we expressly based our decision upon "the broad equity powers of the court in child custody matters to adjust the equities between the parties." 456 So.2d at 835. In contrast, McAllister sought and obtained an award of damages from Dr. Bundrick and in no way invoked the trial court's "equity powers."