THOMAS, Judge.
William P. Vardaman (“the husband”) appeals from a judgment of the Jefferson Circuit Court (“the trial court”) divorcing him from Carol A. Vardaman (“the wife”) and dividing the parties’ marital property.
The parties were married on May 30, 1981; the parties had one child, a daughter who had reached the age of majority before this action began. The parties separated on October 11, 2011, when the wife moved from the marital residence. The wife filed a complaint seeking a divorce on November 7, 2011; the husband filed an answer and a counterclaim for a divorce on December 5, 2011. A trial was held over May 9-10, 2013, and June 14, 2013, at which the trial court heard evidence ore tenus. The parties provided a great deal of testimony regarding several proper *345 ties — some of which were rental properties that the parties owned jointly. There was also testimony regarding properties that the wife jointly owned with other members of her family and, according to the wife, were her separate property. Additionally, the wife testified that she had been afraid of the husband several times throughout the marriage and described two instances when the husband slapped her and other instances when the husband, according to the wife, lost his temper and destroyed breakable items. The wife also testified that the husband had inappropriately touched a female friend more than once during the marriage. That individual also testified at trial and corroborated the wife’s testimony. The husband denied that he had ever been abusive toward the wife or behaved inappropriately with any other woman during the marriage.
The trial court entered a judgment on September 11, 2013, that, in pertinent part, divided the marital property between the parties. The trial court reserved ruling on the issue of periodic alimony.[1] The wife filed a motion to alter, amend, or vacate the judgment on September 18, 2013, in which she requested, among other things, that the trial court correct typographical errors in the judgment. The husband filed a motion for a new trial or, in the alternative, to alter, amend, or vacate the judgment on October 7, 2013, alleging that the division of property was inequitable. On December 10, 2013, the trial court entered an amended final judgment correcting the errors pointed out in the wife’s postjudgment motion; the trial court entered a separate order on that same day denying all other motions filed by either party.
The husband filed a notice of appeal to this court on January 21, 2014. In his brief on appeal, the husband argues (1) that the trial court erroneously determined that certain assets were the wife’s separate property, (2) that the trial court’s division of assets and liabilities was inequitable and exceeded its discretion, and (3) that the trial court erred by ordering the husband to pay the wife’s attorney fees and expenses.
“ ‘A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).’
“Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).”
Carnes v. Carnes, 82 So.3d 704, 710 (Ala.Civ.App.2011).

The Wife’s Separate Property

We first address the husband’s argument that the trial court erroneously excluded assets from the marital estate. Section 30-2-51(a), Ala.Code 1975, provides, in pertinent part, that
“the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the *346 evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
The wife testified at trial that she has a one-third interest in property located in Wilcox County (“the Wilcox County property”) that is jointly owned with her brother and her uncle. The wife’s one-third interest had previously belonged to her mother’s sister (hereinafter referred to as “Aunt Betty”); the wife’s father bought Aunt Betty’s one-third interest and gifted it to the wife in or around 1996.[2] The record indicates that the Wilcox County property was primarily used for hunting and timberland. The wife testified that she remembered that the timber on the Wilcox County property had been cut and sold twice and that she had deposited her share of the proceeds into her individual Regions Bank checking account. She further testified that she had used the funds in the Regions Bank checking account at her sole discretion, for example, to pay the balances on her department-store credit cards and to sometimes purchase groceries; she testified that parties had not used her Regions Bank checking account to pay the monthly utilities for the marital residence. The parties agreed that the husband had placed a cabin and shipping containers that he had converted into sleeping houses on the Wilcox County property; it was undisputed that those structures were portable and could be removed from the property. The husband testified that he had used the parties’ joint funds to build a lake, to create fire lanes, and to install underground utilities on the Wilcox County property.
The wife also jointly owns with her brother property located in Elmore County on Lake Martin (“the Lake Martin property”), which was given to them by their father in or around 1970. It was undisputed that the parties and their daughter visited the Lake Martin property often during the summers. The husband testified that he had used the parties’ joint funds to add a covered deck, sidewalks, underground lighting, and irrigation to the house that stood on the Lake Martin property; the wife testified that no one had asked him to make those improvements.
“The trial judge is granted broad discretion in determining whether property purchased before the parties’ marriage or received by gift or inheritance was used ‘regularly for the common benefit of the parties during the marriage.’ See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such property was regularly used for the common benefit of the parties during the marriage, the determination whether to include such property in the marital assets to be divided between the parties lies within the discretion of the trial court. [Ex parte Durbin], 818 So.2d 404 (Ala.2001).”
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App.2001).
In T.K.T. v. F.P.T., this court affirmed a judgment awarding the wife in that case a one-half interest in property that the husband in that case argued was his separate property. 716 So.2d 1235, 1240 (Ala.Civ.App.1998). In affirming that portion of the judgment, this court relied on testimony indicating that the family had spent weekends there, that the wife had stored family property there, that the parties had included the property in their financial assets, and that the parties had planned to *347 retire to the property. Id. Conversely in Yohey v. Yohey, 890 So.2d 160, 165 (Ala.Civ.App.2004), this court affirmed a judgment treating a lakefront property as the separate property of the husband in that case even though “it was at least arguable that the lot could have been deemed marital property.” The parties in Yohey testified that they had planned to build their future vacation/retirement home on the lot and that they had hired an architect, had arranged for percolation tests on the soil, and had begun foundation work on a residence. Id.
It does not appear from our research that the legislature or our supreme court has definitively explained what constitutes “regular! use] for the common benefit of the parties during their marriage.” However,
“‘[§ ] 30-2-51 states that if a party does not use his or her inheritance or gifts for the common benefit of the parties to the marriage, then the trial judge may not consider the inheritance or'gifts when making a property division. Nothing in the statute states that if one party’s inheritance or gifts are used for the parties’ common benefit then the trial judge must consider the inheritance dr gifts when making the property division. In fact, the statute leaves such a determination to the discretion of the trial judge....’
“[Ex parte Drummond,] 785 So.2d [358,] 362 [ (Ala.2000) ].”
Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001).
The wife in this case jointly owns the Wilcox County property and the Lake Martin property with other members of her family. Even though the husband was allowed use of those properties during the marriage,[3] we cannot say that the evidence dictates that the wife’s interest in those properties was transmuted into marital property. See Nichols, 824 So.2d at 800, 803 (determining that property that the husband in that case had inherited was not marital property despite evidence indicating that the family had used it for hunting and other purposes). Based upon the foregoing, we conclude that the trial court did not err to reversal by excluding those properties from the marital estate.[4]

Division of the Marital Assets

The husband next argues that the trial court’s division of the marital assets was inequitable. We disagree. In his. brief on appeal, the husband alleges that the wife received more than $1.8 million worth of the marital assets, while he received only $513,662. However, the husband included assets in the wife’s total that were the wife’s separate property and, thus, were not part of the marital estate subject to division by the trial court. See Carnes, 82 So.3d at 711-12 (quoting Nichols, 824 So.2d at 802)(“ ‘A party’s ‘separate estate’ is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ ”).
The trial court’s judgment disposed of the marital residence, several rental properties, other real property, financial accounts, and personal property. The husband was awarded the marital residence, *348 worth $242,500; a rental property, valued at $161,600, which, at the time of the trial, was being rented for $750 per month;[5] a vacant lot adjoining the rental property, valued at $29,500; and a vacant lot in Baldwin County, valued at $20,000.[6] The wife was awarded three rental properties, valued at $98,100, $92,200, and $108,500, respectively, and a vacant lot, valued at $18,500; the rental properties awarded to wife were being rented for $585, $600, and $700 per month, respectively.[7] The wife was also awarded a remainder interest in the property that the parties and the trial court referred to as “Aunt Betty’s house”; that property was valued at $224,300. The parties testified that they had purchased Aunt Betty’s house with joint funds and subsequently had executed a deed conveying Aunt Betty a life estate and naming the wife as the sole owner of the remainder interest. It appears that the trial court considered the remainder interest in Aunt Betty’s house as the wife’s separate property. However, even if we were to agree with the husband that the remainder interest was marital property, it was still within the discretion of the trial court to award the remainder interest to the wife in fashioning its judgment dividing the marital assets. See McCartney v. McCartney, 11 So.3d 213, 218 (Ala.Civ.App.2007) (explaining that even if a trial court determines that an asset had been used for the common benefit of the parties it is not required to divide the asset but that, rather, it is within the trial court’s discretion to consider that asset in its property-division award).
The husband was also ordered to be responsible for the home-equity line of credit (“the HELOC”) that was secured by the marital residence. Evidence presented at trial revealed that the parties had used funds from the HELOC to purchase other properties and that rental income had been used to pay the monthly payments on the HELOC. There was also evidence tending to show that the husband had withdrawn funds from the HELOC to put toward the purchase of a sailboat. The wife admitted at the trial that she had withdrawn $36,000 from the HELOC and had deposited those funds into her Iberia Bank account. Documentary evidence indicated that the wife had not used those funds during the pendency of the divorce action. The wife’s withdrawal “maxed out” the HELOC; the wife testified that she withdrew the funds to “protect her interest.” Evidence was also presented at the trial indicating that the husband had retained an insurance settlement from a claim that he submitted for the wife’s automobile that had been wrecked in March 2013. The husband admitted at trial that he should have forwarded those funds to the wife. The husband also admitted that he did not share any of the. income that he had collected from their jointly owned rental properties during the pendency of the divorce action; however, he also testified that some of those funds were likely used for maintenance on the properties. There was also testimony tending to prove, and the trial court found, that, while the divorce action was pending, the husband *349 had withdrawn the remaining funds from the parties’ joint banking account and had deposited those funds into his individual banking account.
The trial court’s judgment awarded the parties their individual financial accounts, with the exception of the wife’s Synovus investment account; it was undisputed at the trial that the Synovus account was regularly used for the common benefit of the parties. The value of each party’s share of the Synovus account was $135,985. The husband was awarded his Union Bank checking account that had a $5,000 balance, his Invesco individual retirement account (“IRA”) valued at $15,935, his Retirement Systems of Alabama (“RSA”) defined-benefit plan valued at $82,640, and his RSA deferred-compensation plan valued at $26,477. The wife was awarded her Iberia Bank account that had a balance of $36,009, her Regions Bank checking account with a $1,047 balance, her Invesco IRA valued at $36,161, and a life-insurance policy with a $13,158 cash value.[8]
Each party was also awarded the personal property in his or her possession. Additionally, the husband was awarded a multitude of tools, equipment, and other personal property that the trial court included in an exhibit to its judgment. Examples of the items listed in the exhibit are: pontoon boats,[9] a sailboat,[10] an excavator, two utility trailers, a farm tractor, and a grand piano.[11] There was no evidence regarding the fair-market value of most of the items that were awarded to the husband.
“"When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.’
“Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).”
Spuhl v. Spuhl, 120 So.3d 1071, 1074 (Ala.Civ.App.2013).
Relying on the values of the properties and the financial accounts provided in the parties’ briefs, our calculations reveal that the husband’s share of the marital assets totaled $719,637 and that the wife’s share, including the remainder interest in Aunt Betty’s house, totaled $763,960. As the husband pointed out, he was ordered to be *350 solely responsible for the HELOC, a $182,974 liability, reducing his total to $536,663.[12] Although, at first glance, it may appear that the wife’s total of assets significantly outweighs the husband’s, it is important to note that these totals do not include the boats, equipment, and other items that the husband was awarded.
The husband also argues that the trial court’s division of assets is inequitable because the wife was awarded the rental property that the husband relied upon to make payments toward the HELOC balance. The husband was awarded a rental property that, he testified, generated $750 per month; $50 more than the husband testified he had been paying each month on the balance of the HELOC. The husband was also awarded other real and personal property that could either be rented or sold to generate income. Additionally, the husband was employed in a part-time position as a school-bus driver with the Hoover City School System, although evidence revealed that he had completed a bachelor’s degree in elementary education in 2010. We are unpersuaded that the trial court’s division of assets and liabilities, including ordering the husband to be responsible for the HELOC, was inequitable.

Attorney Fees

Lastly, the husband argues that the trial court exceeded its discretion by ordering him to pay the wife’s attorney fees. In its judgment, the trial court ordered the husband to pay the wife $74,014 in attorney fees and $13,326 for legal expenses, which equals $87,340 — the total amount of fees and costs requested by the wife’s attorney. In this section of his brief, the husband argues both that the trial court erred because the award of attorney fees was excessive and that the trial court specifically erred by awarding the wife the cost of her expert-witness fees.
We first address whether the trial court erred by awarding the wife the cost of her expert-witness fees. The wife’s attorney filed an affidavit in support of the request for attorney fees to which an itemization of fees and expenses was attached. Included in the expenses was a line-item amount of $9,150 for expert-witness fees. Because the trial court granted the wife the entire requested amount of $13,326 for legal expenses, we must assume that the expert-witness fees were included in that amount. It has been long established that “ ‘[t]here is practically unanimity of authority in this country that compensation of experts cannot be allowed and taxed against the parties as costs in -litigation unless so provided by statute.’ ” Bundrick v. McAllister, 882 So.2d 864, 867-68 (Ala.Civ.App.2003)(quoting Hartley v. Alabama Nat’l Bank of Montgomery, 247 Ala. 651, 656, 25 So.2d 680, 683 (1946)). Moreover, our supreme court quoted the following analysis from this court in analyzing this issue.
“In Garrett v. Whatley, 694 So.2d 1390, 1391-92 (Ala.Civ.App.1997), the Court of Civil Appeals addressed a claim that the trial court had exceeded its discretion in awarding, as a part of the costs for the action, fees for expert witnesses:
“ ‘In Cooper v. Cooper, 57 Ala.App. 674, 331 So.2d 689, cert. denied, 331 So.2d 695 (Ala.1976), this court noted that “[t]he court cannot award ex *351 pert’s fees as a matter of costs unless allowed by statute.” 57 Ala.App. at 680, 331 So.2d at 694-95 (citing Hartley v. Alabama Nat’l Bank, 247 Ala. 651, 25 So.2d 680 (1946)). Although we have allowed expert fees as a component of otherwise compensable attorney fees, see Cooper, 57 Ala.App. at 680, 331 So.2d at 695, and as an item of costs in workers’ compensation actions pursuant to the authority of § 25-5-89, Ala.Code 1975, see Universal Forest Prods. v. Ellenburg, 627 So.2d 395, 397 (Ala.Civ.App.1992), aff'd in pertinent part by Ex parte Ellenburg, 627 So.2d 398 (Ala.1993), we have recently reaffirmed and applied the above-quoted principle. In Davis v. Davis, 686 So.2d 1245 (Ala.Civ.App.1996), we reversed a portion of a divorce judgment awarding expert fees as costs to the prevailing party, citing Cooper and Hartley. 686 So.2d at 1249-50.’ ”
Southeast Envtl. Infrastructure, L.L.C. v. Rivers, 12 So.3d 32, 51 (Ala.2008). Because neither our legislature nor our supreme court has seen fit to permit expert-witness fees to be recovered in domestic-relations matters, we must conclude that the trial court exceeded its discretion in failing to exclude those fees. We therefore reverse that portion of the trial court’s judgment awarding the wife expert-witness fees in the amount of $9,150.
We next address whether the wife’s award of attorney fees was excessive. We first note that
“ ‘[i]t is well settled that “ ‘Alabama follows the “American rule.” ’ ” ’ Jones v. Regions Bank, 25 So.3d 427, 441 (Ala.2009) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1078 (Ala.2006), quoting in turn Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala.1995)). The American rule generally provides that a prevailing party in litigation is not entitled to an award of attorney fees unless those fees are provided for by statute or by contract or if they are otherwise justified for certain equitable reasons. Classroomdirect.com, LLC v. Draphix, LLC, 992 So.2d 692, 710 (Ala.2008).”
Guardian Builders, LLC v. Uselton, 154 So.3d 964, 970 (Ala.2014). Section 30-2-54, Ala.Code 1975, provides for an award of attorney fees in a divorce action.
“ ‘ “Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the , trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).” ’
“Lackey v. Lackey, 18 So.3d [393,] 402 [ (Ala.Civ.App.2009) ] (quoting Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996)).”
Ladden v. Ladden, 49 So.3d 702, 719 (Ala.Civ.App.2010).
Even after subtracting the amount attributed to expert-witness fees, the husband is still responsible for $78,190 in attorney fees and legal expenses. Based upon the record, we note that there was evidence indicating that the husband had obtained a college degree, had previously owned his own company, and had a greater earning potential than the wife. The wife, on the other hand, had obtained a high-school diploma and, other than *352 working as an administrative assistant, had primarily been at stay-at-home mother during the marriage. Although the husband references only the trial court’s distribution of the parties’ real property, the husband was also awarded an extensive amount of personal property that included items such as different types of boats, guns, a grand piano, and a tractor. Additionally, even though the trial court did not indicate the grounds upon which it based its judgment, the record contains evidence that, if believed, tended to show that the .husband’s conduct was a major factor contributing to the breakdown of the marriage. Furthermore, the wife’s attorney submitted an affidavit to the trial court that included an itemized breakdown of fees and expenses. The affidavit, which was unopposed by the husband, also asserted that at least a portion of the fees and expenses were incurred due to the husband’s less than cooperative participation during the pretrial portion of this action. The trial court was entitled to consider fault and the parties’ conduct in awarding attorney fees. K.D.H. v. T.L.H., 3 So.3d 894, 901-02 (Ala.Civ.App.2008).
However, the wife also presented the trial court with an exhibit that indicated that from 2008-2011 the wife earned an average annual income of $18,796 per year; the wife received an additional $6,258 per year from TECO. The wife also testified that she was living rent-free in a home that was owned by her mother. The husband’s average earned income as a school-bus driver for that same period was $14,941 a year. The wife’s exhibit did not include the income the parties had received from the rental properties. We recognize that it is within the purview of the trial court to determine whether an award of attorney fees is proper. See Ladden, supra. However, we also note that the wife has substantial assets from which to pay her attorney fees. See generally Newton v. Newton, 655 So.2d 1033, 1035 (Ala.Civ.App.1995).
The trial court did not include findings of fact in the portion of its judgment awarding the wife the entire amount of attorney fees that she requested. Although the trial court is not Required to include findings of fact, without such findings we are left to review the record to find support for the award. Because we cannot find evidence in the record supporting what, in this case, we consider to be an excessive amount of attorney fees, we conclude that an award of $78,190 in attorney fees and legal expenses was not equitable in light of the totality of the evidence and the division of assets between the parties. Thus, we reverse the attorney-fee award and remand this cause for the trial court to determine an appropriate award of attorney fees.

Conclusion

We affirm trial court’s judgment insofar as it determined the separate property of the parties and divided the marital property between the parties. We reverse that portion of the trial court’s judgment awarding the wife expert-witness fees and remand this cause for the trial court to vacate that portion of its judgment. We further reverse the portion of the trial court’s judgment awarding the wife the remaining requested attorney fees and legal expenses and remand the cause for the trial court to enter a judgment consistent with this opinion.
The husband’s and the wife’s requests for attorney fees on appeal are denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and DONALDSON, J., concur.
*353 MOORE, J., concurs in the rationale in part and concurs in the result, with writing.
PITTMAN, J., concurs in the result, without writing.

. The wife testified at trial that she was not seeking an award of periodic alimony.

. The wife’s brother's one-third interest was previously owned by the wife’s mother; the brother was also gifted his interest.

. The husband does not argue that he should be awarded the value of the improvements that he made to the Wilcox County property or the Lake Martin property using marital funds.

. The husband also argues that the trial court erroneously determined that a property in which the wife has a remainder fee-simple interest — “Aunt Betty’s house” — was wrongfully excluded from the marital estate. We will address that property, infra.

. The record indicates that the husband had entered into a lease-purchase agreement with • the tenant of the rental property that the husband was awarded.

. During the pendency of the divorce action the husband purchased another property adjoining the Baldwin County lot, valued at $35,000.

. The record indicates that the rental property awarded to the wife that was valued at $98,100 was also subject to a lease-purchase agreement that the husband had entered into with the tenant.

. The wife owns a 7% interest in TECO, a company founded and owned by her family. The wife testified that her 7% interest was worth approximately $180,000, which the husband included in her share of the marital assets. However, it appears from the judgment that the trial court considered this to be the wife’s separate property and, therefore, that the trial court excluded it from the division of marital assets.

. The husband valued the pontoon boats at trial at $500 and $1,500, respectively.

. The husband testified that had he paid $62,000 and had traded a smaller boat for the sailboat.

. The husband was also awarded his interest in a Cessna airplane. However, the husband testified that the airplane was not certified to fly and was not marketable at the time of trial due to a cloud on the title.

. In his brief on appeal, the husband includes as marital liabilities two additional personal loans that he acquired while the divorce action was pending. However, the husband testified at trial that those funds were primarily used to purchase property in Baldwin County. See note 6, supra. The trial court did not include the personal loans as marital debt in its judgment.