BRYAN, Judge.
James Carnes (“the husband”) appeals from a judgment entered by the Fayette Circuit Court (“the trial court”) that divorced him from Mary Elizabeth Carnes (“the wife”) insofar as it entered a permanent restraining order against him, divided the parties’ property and debts, and refused to find the wife guilty of contempt.
The wife filed a complaint for a divorce on May 23, 2008. In her complaint, the wife alleged that the parties were married on June 24, 2006, and that no children were born of their marriage. The wife further alleged that the husband had assaulted the wife on May 13, 2008, that she had subsequently obtained a proteetion-from-abuse order against the husband, and that the husband had criminal charges pending against him in Fayette County. On the same day, the trial court entered an order that allowed the wife to maintain temporary use and possession of the marital residence, a 2004 Chevrolet truck, a four-wheeler, a garden disk, a lawn mower, a utility trailer, furniture, two dogs, and her personal items; the husband was allowed to maintain temporary use and possession of a 1996 Dodge truck, a 1989 Chevrolet truck, a fishing boat, a ski boat, and his personal items.
On August 6, 2008, an attorney for the husband filed a notice of appearance on behalf of the husband. The next filing that appears in the record on appeal is a motion to withdraw filed by the husband’s attorney on January 12, 2010. A second attorney filed a notice of appearance on behalf of the husband on April 29, 2010, and the husband contemporaneously filed an answer to the wife’s complaint for a divorce. On July 30, 2010, the husband filed a motion for pendente lite relief, requesting that the trial court enter an order requiring the wife to preserve the personal property “of this action” until the trial court could equitably distribute the property. In his motion, the husband included a list of approximately 53 items of personal property, including the four-wheeler referenced in the May 2008 pendente lite order. On August 17, 2010, the trial court entered an order that prohibited both parties from liquidating, wasting, or otherwise converting any and all personal and marital property listed in the husband’s motion for pendente lite relief.
On September 21, 2010, the husband filed a motion seeking to hold the wife in contempt because, he alleged, she had sold the four-wheeler in violation of the trial court’s August 17, 2010, pendente lite order.
*707 The trial court conducted an ore tenus hearing on November 18, 2010. At that hearing, the wife testified that she had separated from the husband on May 18, 2008, after the husband was arrested for domestic violence. According to the wife, on the night of May 18, 2008, the husband had beaten her and had tried to break her neck. The wife also alleged that, when she got in her truck in an attempt to get away from the husband, the husband “shot [her] truck up and shot [her] tires out” while she was in the truck. The wife testified that the husband was arrested that night and that she filed for and was granted an ex parte protection-from-abuse order the following day. According to the evidence submitted during the ore tenus hearing, the Fayette District Court (“the district court”) subsequently held a hearing on the wife’s petition for protection from abuse and entered a protection-from-abuse order on behalf of the wife and against the husband on May 27, 2008, in case no. DR-08-56. That protection-from-abuse order indicated that it was “permanent” and was intended to be effective until the entry of additional orders of the district court.
The husband stated that, on the night of May 13, 2008, he and the wife had been arguing and that, out of frustration, he had thrown an ashtray through the glass door of his gun cabinet. He stated that he and the wife were calmly picking up the glass and that he put his hands around the wife’s throat and told her to “stop this ... I could break your neck.” The husband stated that the wife then gave him a black eye and that, when he tried to restrain her, she bit him. The wife admitted that she had bitten the husband on the leg when he was holding her down. The husband stated that, when he went to the restroom, the wife went outside and got in her truck. The husband went outside after the wife, and, according to the husband, the wife started driving the truck toward the husband. The husband stated that he feared for his life and that, therefore, he shot the tires out of the wife’s' truck with a pistol that he had retrieved from his nightstand while he was inside the parties’ house. The husband stated that two sheriffs came to his house and arrested him, and he spent three days in jail.
After the husband was released from jail, the husband’s brother and sister went to the parties’ house and picked up some of his clothing and one of his trucks. The husband stated that he did not go back to the parties’ residence because the protection-from-abuse order prohibited him from doing so.
The wife stated that she had “eventually” called the husband, sent him text messages, and met him in person. The wife stated that she and the husband had attempted to reconcile and that, at the request of the husband, she had sent the district attorney a letter on January 31, 2010, stating that she wanted all criminal charges pending against the husband to be dropped. The husband admitted that he had asked the wife to drop the criminal charges pending against him. According to the wife, the criminal charges pending against the husband had been dismissed. However, the parties’ attempts at reconciliation failed, and the wife filed a second petition for protection from abuse on November 10, 2010, in case no. DR-10-157, approximately one week before the ore tenus hearing in the parties’ divorce proceeding. The wife submitted telephone records indicating that the husband had contacted the wife through telephone calls and text messages throughout the summer of 2010. The wife requested that the trial court enter a permanent restraining order against the husband.
*708 According to the husband, the protection-from-abuse order was “cleared up” the week before trial. However, it is unclear from the record whether the husband was referring to the protection-from-abuse order that had been in effect since May 14, 2008, in case no. DR-08-56 or the petition for protection from abuse that was filed by the wife in case no. DR-10-157 on or about November 10, 2010, which was the week before trial.
The wife stated that, in September 2008, she moved out of the residence that the parties had been renting at the time of their separation, and, when she did so, she sent the husband a letter informing him that she was moving and that he needed to make arrangements to pick up his belongings, including a “fishing boat and equipment, a ski boat, and a 1989 Z71 truck.” In the letter, the wife gave the husband 15 days to retrieve his belongings, and she stated that she would make arrangements to dispose of the property that he did not retrieve. The wife stated that the husband’s former wife, the husband’s former wife’s husband, and the husband’s children came to her house to pick up the husband’s property in September 2008. The wife indicated that she and her family had put the husband’s belongings, such as a deer head and the husband’s hunting and fishing gear, in the husband’s truck and in the husband’s boat and trailer. However, the husband’s former wife testified that the boats and the vehicle that she picked up had only a few of the husband’s belongings in them.
The wife stated that she had been storing some of the parties’ belongings in a storage unit since the time that she moved out of the parties’ rented marital residence. The wife stated that she had offered to allow the husband to retrieve his property from the storage unit. The husband refused to do so, however, because of the protection-from-abuse order. The wife stated that she had thrown away a couch that the parties owned because the husband had burned a hole in the couch on the night that the husband was arrested and that she had thrown away a fire pit that was no longer in working condition.
The wife stated that, after the parties separated, she had possession of a four-wheeler that the parties had purchased in November 2006 for $6,000. The wife testified that she had used $4,300 from her separate checking account to purchase the four-wheeler and that the husband had contributed the remaining $1,700 toward the purchase price. The wife stated that she sold the four-wheeler to her sister for $2,300 in June 2008. The husband stated that he had purchased the four-wheeler in November 2006 for $5,600. The record indicates that the bill of sale for the four-wheeler stated that the husband was the buyer of the four-wheeler and that the wife was the witness to the purchase. However, the bill of sale was not introduced or admitted into the record. The husband alleged that the wife had not really sold the four-wheeler to her sister, and he produced pictures of the wife riding the four-wheeler with her daughter and her niece in July 2010. The wife submitted into evidence a bill of sale that indicated that she had sold the four-wheeler to her sister on June 15, 2008.
In 2006, before the parties were married, the wife purchased a 2004 Chevrolet truck. According to the wife, she and the husband had purchased the truck together with the intention that it would be the husband’s truck; however, she stated that the truck “wound up” being her truck. The wife admitted that her name was on the title to the truck, and the evidence produced by the wife indicated that the debt on the truck was in her name only. At some time before March 25, 2009, the *709 2004 Chevrolet truck was repossessed. The wife introduced evidence indicating that she owed $11,902.53 on the truck. The wife stated that the husband should be responsible for at least a portion of the debt owed on the 2004 Chevrolet truck because she and the husband had made payments on the truck together.
The wife also introduced evidence indicating that she owed a debt to DirecTV in the amount of $721.01. She stated that the parties had owed a debt to DirecTV at the time that they separated, but she admitted that she had maintained DirecTV service from May 2008 through September 2008 while the husband did not live in the marital residence. The wife testified that she took out a loan in 2007 to pay for school clothes for the wife’s child and the husband’s four children; at the time of trial, the balance on that loan from CitiFi-nancial was $3,978.88. Finally, the wife presented evidence indicating that she owed a debt to CenturyTel, which appears to be a telephone company. The bill produced by the wife indicates that, as of March 2008, the wife owed CenturyTel $89.45.[1]
The wife works as a registered nurse, and she earns between $75,000 and $90,000 a year. The husband testified that he is a pipe fitter and that his job requires extensive travel and a security clearance because he works on nuclear power plants. There is no indication in the record of the amount of the husband’s income. The husband maintained that he did not have possession of the majority of his tools, guns, fishing equipment, and hunting equipment that were last in the wife’s possession.
Following the presentation of the above evidence, the trial court entered a final judgment of divorce on February 9, 2011. Pursuant to that judgment, the trial court entered a permanent restraining order that prohibited the husband from contacting, harming, or harassing the wife, prohibited the husband from going on or about the premises occupied by the wife, and prohibited the husband from being in the wife’s presence at any time. The trial court awarded the husband approximately 40 items of personal property. The wife was awarded the remaining items of personal property of the marriage, including the four-wheeler, an embroidery machine, her bridal engagement ring set, and the parties’ dog.[2]
The trial court ordered the parties to each pay one-half of the following debts: the debt owed as a result of the repossession of the 2004 Chevrolet truck; the DirecTV debt; the CitiFinancial debt; and the CenturyTel debt. Finally, the trial court held that the wife had not willfully violated either of the trial court’s pendente lite orders and that she was not guilty of contempt.
On March 8, 2011, the husband filed a motion to alter, amend, or vacate the divorce judgment, pursuant to Rule 59, Ala. R. Civ. P. Before the trial court ruled on the husband’s postjudgment motion, the husband filed a notice of appeal on March 21, 2011. The husband’s postjudgment motion was denied by operation of law on June 7, 2011, see Rule 59,1, Ala. R. Civ. P.,[3] and the husband’s notice of appeal, *710 which had been held in abeyance pending-a ruling on his postjudgment motion, became effective on that date. See Rule 4(a)(5), Ala. R.App. P.
Before we address the issues presented by the husband on appeal, we note this court’s standard of review as to a judgment that is entered after the presentation of ore tenus evidence.
“A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).”
Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).
On appeal, the husband first argues that the trial court erred in entering a permanent restraining order against him because the parties were divorced on the ground of incompatibility of temperament and because the husband did not have a history of domestic violence. However, we conclude that there was sufficient evidence in the record to support the trial court’s order restraining the husband from contacting, harming, or harassing the wife. The husband admitted that he had put his hands around the wife’s neck and that he had told her that he could break her neck. The husband also admitted to firing a handgun at a truck that was occupied by the wife. Furthermore, the record indicates that the parties’ tumultuous relationship continued after they separated, despite the existence of a protection-from-abuse order.[4]
The husband also argues that the trial court’s judgment failed to comply with Rule 65(d)(2), Ala. R. Civ. P., which sets forth the requirements for an order issuing an injunction. However, our review of the record reveals that the husband failed to argue before the trial court that the restraining order in the divorce judgment did not comply with Rule 65, Ala. R. Civ. P. Accordingly, this court may not consider that argument on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate cjourt cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).
The husband also argues that the trial court exceeded its discretion by making him responsible for payment of one-half of the debt owed on the 2004 Chevrolet truck. The husband contends that, because the wife purchased the 2004 Chevrolet truck before the parties married, he should not have been allocated any responsibility for *711 payment of the debt secured by the 2004 Chevrolet truck.
In support of his argument that he should not be liable for one-half of the debt on the 2004 Chevrolet truck, the husband cites Ala.Code 1975, § BO-4-6, which provides: “The husband is not liable for the debts or engagements of the wife, contracted or entered into before marriage, or for torts committed by her before marriage, but she remains liable and suable therefor as if she were sole.” (Emphasis added.) Our research has revealed no caselaw interpreting § 30-4-6, despite the fact that that provision dates back to the Alabama Code of 1886 (found, at that time, at § 2344).
“ ‘Principles of statutory construction bind this Court to interpret plain language of a statute “to mean exactly what it says” and to engage in judicial construction only if the language in the statute is ambiguous.’ ” Sullivan v. Smith, 925 So.2d 972, 976 (Ala.Civ.App.2005) (quoting Ex parte Alabama Bd. of Pardons & Paroles, 814 So.2d 870, 872 (Ala.2001), citing in turn Ex parte Alabama Great Southern R.R., 788 So.2d 886, 889 (Ala.2000), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)).
A plain reading of § 30-4-6 reveals that that Code section applies when a third party files an action against a married woman to enforce a contract that the married woman entered into before she married or when a third party files an action against a married woman to recover damages arising from a tort committed by the married woman before she married. According to § 30-4-6, the married woman’s husband would not be hable in the contract-enforcement action or the tort action if the married woman entered into the contract before she married or if the married woman committed the tort before she married. Accordingly, we cannot conclude that § 30-4-6 lends any support to the husband’s argument.
A “marital debt” is a debt that is incurred during the parties’ marriage, and the allocation of marital debt in a divorce action is a decision that is left to the sound discretion of the trial court. See Ex parte Jackson, 567 So.2d 867, 868-69 (Ala.1990). Using the above definition of marital debt, the loan incurred by the wife to finance the purchase of the 2004 Chevrolet truck could not be classified as marital debt because it did not meet the threshold definition of marital debt, i.e., it was not incurred during the parties’ marriage. However, the wife argued at trial that the husband should be allocated some portion of the debt on the 2004 Chevrolet truck because he made monetary contributions toward the payment of the debt secured by the 2004 Chevrolet truck. To determine whether the debt on the 2004 Chevrolet truck could properly be allocated between the parties as a marital debt, the pertinent question, we think, is whether the 2004 Chevrolet truck could be classified as a marital asset subject to division had it not been repossessed during the parties’ separation. If the 2004 Chevrolet truck could not be classified as a marital asset subject to division, and instead was the wife’s separate property, it follows that the debt on the 2004 Chevrolet truck is not marital debt and that the husband should not have been allocated any. portion of that debt. Conversely, if the 2004 Chevrolet truck could have been properly classified as marital property, then the trial court could have, in equity, allocated a portion of the debt secured by the 2004 Chevrolet truck to the husband.
Regarding marital property and separate property, this court has held:
“A party’s “separate estate” is that property over which [he or] she exercis *712 es exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala.Code 1975.
“The trial judge is granted broad discretion in determining whether property purchased before the parties’ marriage or received by gift or inheritance was used ‘regularly for the common benefit of the parties during the marriage.’ See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such property was regularly used for the common benefit of the parties during the marriage, the determination whether to include such property in the marital assets to be divided between the parties lies within the discretion of the trial court. [Ex parte] Durbin, 818 So.2d 404 (Ala.2001).”
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App.2001).
The record indicates that the 2004 Chevrolet truck was purchased by the wife before the parties married, title to the 2004 Chevrolet truck was in the wife’s name only, and the debt secured by the 2004 Chevrolet truck was financed by the wife only. Thus, at the time it was purchased, the 2004 Chevrolet truck was the wife’s separate property. The question becomes, then, whether there was sufficient evidence to support a finding that the 2004 Chevrolet truck was used regularly for the common benefit of the parties during the marriage, thus making it marital property. Our review of the record reveals nothing that would support a finding that the 2004 Chevrolet truck was regularly used for the common benefit of the parties during their marriage. For all that appears in the record, the wife purchased the truck with the intent of giving the track to the husband, but, for whatever reason, she chose to continue driving the truck herself. There is no indication in the record that, because of the parties’ marriage, the husband derived any benefit from the wife’s purchase of the 2004 Chevrolet truck. Accordingly, we conclude, based on the evidence presented in this case, that the 2004 Chevrolet track could not have been properly classified as marital property subject to division in the parties’ divorce action.
Because we cannot conclude that the 2004 Chevrolet track could have been classified as marital property, we cannot conclude that the debt secured by the 2004 Chevrolet truck was a marital debt subject to allocation upon divorce of the parties. At trial, the wife contended that the husband should be responsible for part of the debt she owed on the 2004 Chevrolet track simply because the husband had contributed some unknown amount to the payment of that debt. However, we find it wholly inequitable to allocate a portion of the debt incurred by the wife before the parties’ marriage to the husband simply because the husband voluntarily chose to assist the wife with the repayment of the debt she had incurred before the parties married. Accordingly, that part of the divorce judgment ordering the husband to pay one-half *713 of the debt owed on the 2004 Chevrolet truck is reversed.
The husband also argues that he should not have been allocated any portion of the CitiFinancial debt because he never accepted liability for that debt and did not benefit from the funds obtained from that loan. However, the record indicates that the wife borrowed money from CitiFinan-cial during the parties marriage in order to pay for clothing for her child and for the husband’s four children. Based on that evidence, the trial court could have concluded that the CitiFinancial loan was a marital debt that could be allocated in the divorce action because it was incurred during the parties’ marriage and, furthermore, because the husband was clearly a beneficiary of the loan taken out by the wife because the proceeds of the loan were used to provide support to the husband’s children.
The husband further argues that he should not have been allocated any portion of the debt owed to DirecTV because the wife continued to enjoy DirecTV service after he moved out of the marital residence. However, the wife testified that the amount owed to DirecTV was for service that she and the husband enjoyed during their marriage. Based on that testimony, the trial court could have concluded that the debt to DirecTV represented a debt that had accumulated during the parties’ marriage while the husband and the wife were still living together in the marital residence. See Ex parte Pielach, 681 So.2d 154, 154 (Ala.1996) (“The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence.”). Accordingly, we cannot conclude that the trial court erred by determining that the DirecTV debt was a marital debt subject to allocation in the parties’ divorce action. See Ex parte Jackson, 567 So.2d at 868-69.
Next, the husband argues that the trial court’s division of personal property was inequitable.
“When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001).”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
The husband argues that the trial court erred because it awarded the wife personal property that had been purchased with his income, such as the four-wheeler, an embroidery machine, a dog, and the wife’s “bridal engagement set.” The testimony presented by the parties was in dispute as to who contributed the majority of the funds toward the purchase of the four-wheeler. Regardless, the record indicates that the four-wheeler was purchased during the parties’ marriage. Regarding the *714 parties’ dog, there was no indication in the record that the dog was purchased by the husband before the parties’ married. The wife introduced a document that she signed, before the parties were married, in order to adopt the parties’ dog from the pound. The record reflects that the husband purchased the wife’s engagement ring but that the wife purchased her wedding band. Finally, of the record is devoid of any evidence regarding the embroidery machine, except that the parties disputed its value in an exhibit introduced into evidence.
Thus, based on that evidence, we cannot conclude that the trial court could not have awarded the wife the four-wheeler, an embroidery machine, a dog, and the wife’s bridal engagement set.
The husband also argues that the division of personal property was inequitable because, he says, the evidence indicated that the wife deliberately destroyed or transferred the parties’ personal property while that property was under her care. The husband also argues that, based on the wife’s testimony at trial indicating that she was not in possession of the majority of the personal property that the trial court awarded to the husband, the wife improperly gave away or otherwise disposed of his personal property. However, our review of the record reveals that the only piece of personal property that the wife sold during the parties’ separation was the four-wheeler, and there is no evidence in the record indicating that the wife gave away or deliberately destroyed any of the husband’s personal property, with the exception of the couch and the fire pit that the wife claimed were no longer in good condition.
The wife maintained that she had made the husband’s belongings available to him and that members of the husband’s family had retrieved the husband’s belongings. The trial court could have concluded that the wife’s testimony was more credible than the husband’s testimony and that the wife had, not destroyed or concealed the husband’s belongings.
The husband also argues that the wife should have been required to turn over the personal property that he was awarded or to compensate the husband for the destruction of such property.[5] The argument presented by the husband on this ground consists of only the above assertion; he cites no authority to support this argument. Therefore, despite the fact that there is no evidence indicating that the wife destroyed the husband’s property, we will not address this argument on appeal. See Rule 28(a)(10), Ala. R.App. P. (requiring an appellant to cite authority in support of arguments made on appeal); and Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (stating that “[t]his court will address only those issues properly presented and for which supporting authority has been cited”).
Although we have determined that the CitiFinancial debt and the DirecTV debt could have been allocated as part of the division of marital debt in the parties’ divorce action, and although we have determined that certain personal property, discussed above, could have been divided in the divorce action, because we have reversed part of the trial court’s division of the marital estate, i.e., the debt owed on the 2004 Chevrolet truck, we remand the case with instructions to the trial court to *715 reconsider its division of the marital estate in light of this opinion. See Foster v. Foster, 365 So.2d 1227, 1229 (Ala.Civ.App.1978) (reversing a divorce judgment that improperly included part of the wife’s separate estate in the division of property in a divorce judgment and remanding the case to the trial court to “reassess the entire property division contained in the divorce judgment”).
Finally, the husband argues that the trial court erred by refusing to hold the wife in contempt for violating the May 2008 protection-from-abuse order, which was entered by the district court in case no. DR-08-56, and the August 2010 pen-dente lite order, which was entered by the trial court in the divorce action (case no. DR-08-61). The record reveals that the husband requested only that the trial court hold the wife in contempt for her failure to abide by the August 2010 pendente lite order in the divorce action.[6] Accordingly, we will consider only the husband’s argument that the trial court erred in refusing to hold the wife in contempt for violating the August 2010 pendente lite order by selling the four-wheeler.
“Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.” Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala.Civ.App.2000) (citing Shellhouse v. Bentley, 690 So.2d 401 (Ala.Civ.App.1997)). In order to find the wife guilty of contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or Rule 70A(a)(2)(D) (civil contempt), Ala. R. Civ. P., the trial court would have had to determine that the wife had willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
In May 2008, shortly after the wife filed for a divorce, the trial court granted the wife temporary use and possession of the four-wheeler, among other things. That order did not specifically forbid the wife from selling the four-wheeler. In June 2008, the wife sold the four-wheeler to her sister. At the request of the husband, in August 2010, the trial court entered a pendente lite order that prohibited both parties from liquidating, wasting, or otherwise converting any and all personal or marital property. In its judgment, the trial court determined that the wife had not willfully violated any of its temporary orders. We cannot conclude that the trial court exceeded its discretion by determining that the wife had not willfully violated the May 2008 order by selling the four-wheeler, even though the wife was granted only temporary use and possession of the four-wheeler at the time that it was sold. Furthermore, we cannot conclude that the trial court exceeded its discretion by concluding that the wife had not willfully violated the August 2010 pendente lite order because the wife’s alleged violation of that order occurred more than two years before the trial court entered the order. Accordingly, we cannot conclude that the trial court exceeded its discretion by determining that the wife had not willfully violated either of its pendente lite orders.
*716 Based on the foregoing, the judgment of the trial court, insofar as it divided the parties’ marital property and debts, is reversed, and the case is remanded with instructions to the trial court to enter a judgment consistent with this opinion. In all other respects, the trial court’s judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. However, the bill had a handwritten notation that stated that, as of November 17, 2010, the balance owed to CenturyTel was $211.71.

. The record indicated that one of the two dogs that had been awarded to the wife in the trial court’s May 2008 pendente lite order had died.

.Rule 59.1 provides that a postjudgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following the husband’s filing of his postjudgment mo *710 tion on March 8, 2011, was Monday, June 6, 2011, a State holiday. Therefore, the husband’s postjudgment motion was deemed denied on Tuesday, June 7, 2011. See First Alabama Bank v. McGowan, 758 So.2d 1116 (Ala.Civ.App.2000), and Richburg v. Cromwell, 428 So.2d 621 (Ala.1983).

. Although the record indicates that the wife had contacted the husband while the protection-from-abuse order was presumably in effect, the husband did not argue on appeal that the permanent restraining order should have also been applied to the wife.

. We note that the divorce judgment stated that the wife "shall make a good faith effort to find any items not already in the husband's possession and return or see the same is returned if found or, in the alternative, allow the husband to retrieve the same if he will not be in violation of the restraining order....”

. Furthermore, the propriety of seeking a finding of contempt against the wife in the divorce action for violating the protection-from-abuse order is questionable because the protection-from-abuse action, which was in the district court, was a separate proceeding from the divorce action, which was in the trial court. Also, the protection-from-abuse order entered in May 2008 in case no. DR-08-56 does not indicate that the wife was restrained or enjoined from contacting the husband.