PITTMAN, Judge.
*255 Wendy Jacobs ("the mother") appeals from a judgment entered by the Hale Circuit Court ("the trial court") in a postdivorce action brought by the mother against Byron Jacobs ("the father"), her former husband. We affirm in part, reverse in part, and remand.
Facts
The mother and the father married in 1990 and had four children during their marriage, a set of twins born in 1995 and a set of twins born in 2000. The parties divorced in February 2013. The divorce judgment incorporated an agreement entered into by the parties in January 2013 while the father was incarcerated. The divorce judgment awarded the mother sole physical and legal custody of the parties' four children and provided that the father would have no visitation or any contact whatsoever with the children during their minority. The agreement incorporated into the judgment further provided, in pertinent part:
"5. [The father] is self-employed and his income is variable. However, because of [the father's] actions, [he] presently has no income and has no anticipation of earning any income in the immediate future. Therefore, both parties agree that in lieu of current child support, [the mother] will continue to occupy the [parties'] residence located [in Moundville, Alabama], and [the mother] will continue to pay the mortgage on said property. When the younger children reach the age of majority, or if [the mother] remarries, the property will be listed for sale as soon as possible thereafter and the net proceeds of such sale, less one-half (½) of all payments made by [the mother] for principal, interest, insurance, and ad valorem taxes from October 2012 to the date of such sale, shall be divided between [the mother] and [the father]. [The father] agrees to immediately execute and deliver to [the mother] or her agent any and all documents that may be required to accomplish the intention of this paragraph and shall promptly do all things necessary to that end.
"6. When [the father] is gainfully employed, [he] shall pay to [the mother] an amount to be determined by the court based on the parties' incomes at that time as support for the minor children of the parties, said payments to be by income withholding order upon petition by [the mother] or [the father]. Further, when [the father] is gainfully employed, [the father] is to pay for and keep in force all available medical, optical, and dental insurance on the children during their minority. Additionally the parties agree that each party will pay one-half (½) of all medical, dental, prescription drug, and optical expenses not covered by insurance and one-half (½) of all insurance co-pays, school, and college expenses.
"7. All outstanding indebtedness of both [the mother] and [the father] as of the date of this Agreement will be paid by [the father], and [the father] will hold [the mother] harmless therefrom...."
After being released from jail in May 2013, the father was admitted to an alcohol-abuse-rehabilitation facility and remained there until August 2013. The father then held several jobs in the construction industry. His first job was working for Mike's Framing; that job began on August 30, 2013, and ended in May 2014. He worked full time for Mike's Framing; initially, he was paid $12.50 per hour but that was later increased to $14.25 or $14.50 per hour. After his job with Mike's Framing ended, the father was unemployed for several months while he looked for *256 another job. In late August or early September 2014, the father began working for B & B Construction and was paid approximately $14.75 per hour; however, he lost that job in December 2014 when he was arrested on a charge of domestic violence. He was released from jail in January 2015 and applied to the Social Security Administration for disability benefits in February 2015; however, his application for disability benefits was denied after he accepted a job with Humphrey & Associates, another construction company, in March 2015. He was paid $18 per hour by Humphrey & Associates and worked for that company until he suffered an on-the-job injury in June 2015. The father testified that a load of 14 sheets of drywall had fallen on his leg, breaking his leg and damaging the soft tissue of his leg. He had to have surgery on his leg and received workers' compensation benefits in the amount of approximately $1,000 per month while he recovered from his injury. Since recovering from his injury, the father has successfully bid as a contractor on several construction jobs but has not held a full-time job. He testified that a second application to the Social Security Administration for disability benefits he had submitted a few months before trial had been denied because he was unable to submit all the necessary documents due to his having been incarcerated at the time.
After the father became gainfully employed, neither he nor the mother sought an order establishing the amount of his child-support obligation; however, between October 4, 2013, and May 12, 2015, the father made periodic payments to the mother in various amounts and on an irregular basis. The father introduced into evidence documents evidencing payments during that period totaling $10,300. He did not make any payments to the mother after May 2015.
When the parties' divorced, they owed approximately $4,000 on a Visa credit card and owed their bank approximately $250 for an overdraft on their checking account. The father neither paid the debts the parties owed when they divorced nor provided medical, dental, and optical insurance for the children. The mother paid the $250 debt the parties owed their bank for an overdraft and paid approximately $2,000 of the debt the parties owed on their Visa credit card. In addition, the mother provided the children's medical, dental, and optical insurance. When this action was tried in August 2016, the mother had incurred total costs of $13,381 to provide the children's insurance. In addition, when this action was tried, the mother had paid a total of approximately $750 in medical expenses incurred for treatment of the children that were not covered by insurance, and the father had not reimbursed her for his one-half share of those expenses.
The mother testified that, shortly after the divorce, she and the father had agreed that she would assume sole liability for the debt secured by a mortgage on the parties' residence in exchange for the father's conveying his interest in the residence to the mother and that the father had executed a quitclaim deed conveying his interest in the residence to her.
Procedural History
In May 2015, the mother filed a petition alleging that, despite his having had several jobs since the entry of the divorce judgment, the father had willfully refused to pay the mother child support on a regular basis; had willfully failed to pay the debts the parties owed when the divorce judgment was entered; had willfully failed to pay for the children's medical, dental, and optical insurance; and had willfully failed *257 to pay one-half of the children's medical, dental, and optical expenses that were not covered by insurance. As relief, the mother sought a judgment finding the father in contempt and modifying the divorce judgment so as to establish the amount of child support the father was required to pay.
Answering the mother's petition, the father admitted that he had had several jobs since the entry of the divorce judgment; however, he denied her allegations that he had willfully failed to pay his obligations under the divorce judgment.
After several continuances, the action was tried in August 2016. In October 2016, the trial court entered a judgment. In pertinent part, that judgment states:
"1. The [mother] and [the father] submitted an agreement to this Court in settlement of their then pending divorce case and this Court adopted said Agreement of the Parties as its own order and divorced the parties on or about February 11, 2013.
2. In the parties' agreement the [father] agreed to undertake the following obligations:
"a. The payment of child support.
"b. The payment of medical, optical, and dental insurance of the parties' minor children.
"c. The payment of ½ of the uninsured medical expenses for the minor children.
"d. The payment of all outstanding indebtedness of both the [father] and [the mother] as of the date of the parties' agreement.
"3. At the time of the parties' agreement, the [father] was incarcerated and was unable to fulfill the obligations referenced above. As such, the parties agreed that those obligations would not be triggered until the [father] was released from incarceration and became gainfully employed. After release from incarceration, the [father] was in [an] inpatient alcohol rehabilitation facility until August 2013.
"4. After leaving the alcohol rehabilitation facility, the [father] became gainfully employed. This employment did not lead to the level of earnings that the [father] had previously achieved. From the time that the [the father] became gainfully employed in August 2013, the [father's] rate of pay has ranged from $12.00 per hour to $20.00 per hour. Also, such employment was intermittent and not continuous. As of the date of this hearing, the [father] has twice sought to obtain disability status through the Social Security Administration[;] those efforts have not yet been successful.
"5. The [father] asserted, under oath, that he has been unable to work since at least sometime in 2015 due to injuries sustained on the job.
"6. The Court finds that the [father] became gainfully employed in August 2013 and has been able to work since that time in the construction trades and has an ability to make at least $12.00 per hour. However, the Court finds that the [father] has not been able to secure a forty (40) hour work week at this rate of pay.
"7. This Court finds that the [father's) child-support obligation began on August 1, 2013 and is due to be reduced from that date forward to the amount of $200.00 per month.
"8. Between August 1, 2013 and November 1, 2014 (15 months), the [father's] child-support obligation to the [mother] for four children is $425.00 per month. The [father's] total child-support obligation for said period totals $6,375.00.
"9. Between December 1, 2014 and August 1, 2016 (21 months), the [father's *258 ] child-support obligation to the [mother] for two children is $225.00 per month. The [father's] total child-support obligation for said period totals $4,725,00.
"10. The [father] was able to produce receipts for approximately $10,750.00 as payments to the [mother] on behalf of the minor children from August 2013 through the present. The Court hereby finds that the [father] is entitled to a credit for said payments, leaving a total outstanding back child-support balance of $350.00 plus interest from August 1, 2016.[1 ]
"11. The Court finds that the [father's] failure to pay child support was not willful and as such, the [father] is not found in contempt.
"12. The Court further finds that the [mother] paid $13,381.00 for the provision of medical and dental insurance for the minor children. The Court finds that the [mother] is entitled to reimbursement for said amount. However, inasmuch as the [father] quit claimed his one-half (½) interest in the marital residence to the [mother], during the period of his incarceration, the Court finds that he is entitled to an off-set against the health-insurance obligation in the amount of $13,381.00.
"13. The Court further finds that the [father] did not willfully fail to pay said health and dental insurance. Therefore, the Court finds that the [father] is not in contempt. Prospectively, beginning October 1, 2016, the [father] is also ordered to pay the [mother] the sum of $200.00 per month toward the health and dental expenses of the two (2) remaining minor children.
"14. The Court further finds that the [father's] current child-support obligation shall be $225.00 per month beginning September 1, 2016.
"15. The Court further finds that the [mother] has paid $2,000.00 toward a VISA account that was due to be paid by the [father] according to the terms of the parties' agreement. The Court hereby finds that the [mother] is entitled to reimbursement for said amount and is hereby granted a judgment against the [father] in the amount of $2,000.00. The Court further finds that the [father] shall either extinguish the current outstanding balance of $2,213.00 on said account within one hundred and eighty (180) days of the date of this Order or the [father] shall begin making monthly payments to the [mother] in the amount of $100.00 toward said payment and said payment shall continue until such time as the outstanding balance has been paid in full.
"16. The Court further finds that the [mother] has paid uninsured medical bills for the minor children in the amount of $750.00. The Court finds that the [mother] has made demand on the [father] for payment of ½ of said uninsured medical bill[s] and that the [father] has failed to pay his portion of the medical bill[s]. The Court finds that the [mother] should be reimbursed for ½ of the amount she expended for the medical bill[s] and hereby grants a judgment against the [father] in the amount of $375.00."
The mother timely filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion on November 15, 2016. Among other things, the mother asserted that the trial court had erred by failing to calculate the father's *259 child-support obligations in accordance with Rule 32, Ala. R. Jud. Admin.; by awarding the father a setoff against his obligation to provide medical, dental, and optical insurance for the children based on his conveyance of his interest in the marital residence in the absence of any evidence establishing the value of his interest in the marital residence; by failing to award the mother $250 for the checking-account-overdraft debt she had paid the parties' bank; by granting the father the option to pay the mother for the approximately $2,213 still owed on the parties' credit-card debt in installments of $100 per month; by ordering the father to pay prospectively only $200 per month for medical, dental, and optical insurance despite the undisputed evidence establishing that the mother was paying $710 per month for such insurance; and by failing to award the mother an attorney's fee. The trial court held a hearing regarding the mother's postjudgment motion on January 31, 2017. At the end of the hearing, the following colloquy occurred regarding the father's child-support obligations:
"THE COURT: Y'all can do the [child-support] calculations based on the [Rule 32, Ala. R. Jud. Admin.,] guidelines and the formulas and submit it to me.
"[The father's counsel]: All I can do is impute for him minimum wage.
"THE COURT: You can impute your [sic] salary and minimum wage. Just do them both so I can look at them.
"[The mother's counsel]: So you want us to use minimum wage imputed full time?
"THE COURT: Right. You can do both."
On February 2, 2017, the mother filed two CS-42 forms, one showing what the father's child-support obligation would be if it were calculated on the basis of imputing the income he would earn if he were working full time for $17 per hour, and the other showing what the father's child-support obligation would be if it were calculated on the basis of imputing the income he would earn if he were working full time for the minimum wage. The father did not file a CS-42 form or any other document showing a proposed calculation of his child-support obligation. The trial court did not enter an amended judgment before 90 days had elapsed since the filing of the mother's postjudgment motion, and, consequently, that motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Thereafter, the mother timely filed a notice of appeal.
Standard of Review
" ' " '[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' " ' Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002) ). " 'The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.' " Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985) ). 'Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Waltman v. Rowell, 913 So.2d at 1086."
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala. 2007).
*260 Analysis
The mother first argues that the trial court erred in failing to calculate the father's child-support obligation in accordance with Rule 32. The only child-support forms in the record are the two CS-42 forms filed by the mother after the hearing on her postjudgment motion. Neither of those CS-42 forms conforms to the calculations contained in the trial court's judgment. Thus, the record contains no CS-42 form showing how the trial court calculated the father's child-support obligations as established in its judgment, and we cannot tell from the judgment itself how the trial court calculated those obligations. Paragraph 7 of the judgment states that "the [father's) child-support obligation began on August 1, 2013 and is due to be reduced from that date forward to the amount of $200.00 per month." However, paragraph 8 calculates the father's child-support obligation for the 15-month period between August 1, 2013, and November 1, 2014, based on a child-support obligation of $425 per month, and paragraph 9 calculates his child-support obligation for the 20-month period between December 1, 2014, and August 1, 2016, based on a child-support obligation of $225 per month. In paragraph 6 of the judgment, the trial court found that the father "has an ability to make at least $12.00 per hour" but "that the [father] has not been able to secure a forty (40) hour work week at this rate of pay." That finding together with the finding in paragraph 7 that the father's child-support obligation should be reduced to $200 per month indicates that the child-support obligations established by the judgment are downward deviations from the Rule 32 guidelines; however, the judgment does not indicate the amount of the gross monthly income the trial court imputed to the father. Paragraph 6 implies that the trial court imputed income of $12 per hour to the father but does not indicate how many hours of work per month the trial court imputed to the father. Without knowing the amount of gross monthly income the trial court imputed to the father, we have no way of knowing how the trial court calculated the child-support obligations established in its judgment.
"This court has held that if the record does not reflect compliance with Rule 32(E), Ala. R. Jud. Admin. (which requires the filing of 'Child Support Obligation Income Statement/Affidavit' forms (Forms CS-41) and a 'Child Support Guidelines' form (Form CS-42)), and if child support is made an issue on appeal, this court will remand (or reverse and remand) for compliance with the rule. See Martin v. Martin, 637 So.2d 901, 903 (Ala. Civ. App. 1994). On the other hand, this court has affirmed child-support awards when, despite the absence of the required forms, we could discern from the appellate record what figures the trial court used in computing the child-support obligation. See, e.g., Dunn v. Dunn, 891 So.2d 891, 896 (Ala. Civ. App. 2004) ; Rimpf v. Campbell, 853 So.2d 957, 959 (Ala. Civ. App. 2002) ; and Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala. Civ. App. 1996). Nevertheless, without the child-support-guidelines forms, it is sometimes impossible for an appellate court to determine from the record whether the trial court correctly applied the guidelines in establishing or modifying a child-support obligation. See Horwitz v. Horwitz, 739 So.2d 1118, 1120 (Ala. Civ. App. 1999)."
Hayes v. Hayes, 949 So.2d 150, 154 (Ala. Civ. App. 2006). Because the record does not contain the requisite forms and because we cannot discern from the record how the trial court calculated the child-support obligations established in its judgment, we reverse the judgment insofar as *261 it established those child-support obligations.
The mother also argues that the trial court erred in granting the father a setoff against his obligation to pay the children's medical, dental, and optical insurance based on his conveyance of his interest in the marital residence to the mother because, the mother says, the debt the father owed for failing to provide such insurance was a component of his child-support obligation and, therefore, could not be offset by the conveyance of his interest in the marital residence. However, we cannot consider that argument because it was not presented to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) ("[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court's] review is restricted to the evidence and arguments considered by the trial court.").
The mother next argues that the trial court erred in granting the father a setoff based on his conveyance of his interest in the marital residence to the mother because, the mother says, the record contains no evidence establishing the value of the father's interest in the marital residence. We agree. The record contains no evidence indicating the value of the father's interest in the marital residence; therefore, the trial court erred in granting the father a setoff equal to $13,381, the debt he owed for failing to provide insurance for the children. Accordingly, we reverse the trial court's judgment insofar as it granted the father such a setoff.
The mother next argues that the trial court erred by ordering the father to pay prospectively only $200 per month for medical, dental, and optical insurance because, the mother says, "it appears that the court may have modified the medical support obligation so that the [f]ather became responsible for only $200.00 toward health insurance premiums, rather than including the premiums in an appropriate calculation [of child support]." Although the mother argued before the trial court that it had erred by ordering the father to pay prospectively only $200 per month for medical, dental, and optical insurance despite the undisputed evidence establishing that the mother was paying $710 per month for such insurance, the mother did not argue before the trial court that it had erred by modifying the father's obligation to provide the children with insurance by reducing that obligation to $200 per month or by failing to include the premiums for such insurance in its calculation of his child-support obligation. Therefore, we will not consider those arguments. See Andrews v. Merritt Oil Co., supra.
The mother next argues that the trial court erred by failing to award the mother $250 for the checking-account-overdraft debt she paid. The undisputed evidence indicated that the father was obligated to pay that $250 debt, that he had failed to pay it, and that the mother had paid it. Therefore, the trial court erred in failing to award the mother $250 to reimburse her for paying that debt. Accordingly, we reverse the trial court's judgment insofar as it omitted an award of $250 to reimburse the mother for paying that debt.
The mother next argues that the trial court erred by granting the father the option to pay the mother the approximately $2,213 still owed on the parties' credit-card debt by paying her in installments of $100 per month. However, the mother has cited no legal authority holding that the trial court's granting the father that option was an impermissible exercise of the trial court's discretion. "When a litigant fails to support h[er] argument with proper authority, we have no choice *262 but to affirm." Pierce v. Helka, 634 So.2d 1031, 1033 (Ala. Civ. App. 1994).
Finally, the mother argues that the trial court erred in failing to find the father in contempt for his failure to discharge his obligations under the divorce judgment.
" 'Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.' Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala. Civ. App. 2000) (citing Shellhouse v. Bentley, 690 So.2d 401 (Ala. Civ. App. 1997) ). In order to find [a party] guilty of contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or Rule 70A(a)(2)(D) (civil contempt), Ala. R. Civ. P., [a] trial court would have ... to determine that the [party] had willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala. Civ. App. 2002)."
Carnes v. Carnes, 82 So.3d 704, 715 (Ala. Civ. App. 2011).
In the present case, the undisputed evidence indicated that, beginning in October 2013 and ending in May 2015, the father had paid the mother child support in the amount of $10,300. The trial court expressly found that the father's failure to pay the mother more than $10,300 in child support was not willful. Moreover, the trial court implicitly found that the father's failure to discharge his other obligations under the divorce judgment was not willful.
"In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of witnesses, and the trial court should accept only that testimony it considers to be worthy of belief. Ostrander v. Ostrander, 517 So.2d 3 (Ala. Civ. App. 1987). Further, in determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the witness's apparent candor or evasiveness. Ostrander, supra.... It is not the province of this court to override the trial court's observations. Brown [v. Brown, 586 So.2d 919 (Ala. Civ. App. 1991) ]."
Woods v. Woods, 653 So.2d 312, 314 (Ala. Civ. App. 1994). The trial court apparently found that the father's testimony, which tended to prove that his failure to discharge his obligations under the divorce judgment was the result of financial inability to pay those obligations rather than a willful refusal to do so, was credible, and we cannot substitute our judgment for that of the trial court. See Woods. Therefore, the trial court's declining to find the father in contempt is supported by credible evidence in the record, and, consequently, we cannot reverse that aspect of the trial court's judgment.
Conclusion
In summary, we reverse the judgment of the trial court insofar as it established the father's child-support obligations, insofar as it granted the father a setoff against the debt he owed the mother for her providing the children with insurance, and insofar as it failed to award the mother $250 to reimburse her for paying the checking-account-overdraft debt the parties owed their bank, and we remand the cause for further proceedings consistent with this opinion. We affirm the judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Thompson, P.J., and Thomas, Moore, and Donaldson, JJ., concur.

The record indicates that the father introduced receipts totaling $10,600; however, two of the receipts document the same $300 payment. Thus, the receipts evidence payments totaling $10,300.