Rel: June 12, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

————————————————

## CL-2025-0802

————————————————

### K.N.B.

### v.

### H.M.F., Jr.

### Appeal from Mobile Juvenile Court
### (CS-20-900539.03)

BOWDEN, Judge.

K.N.B. ("the mother") appeals from a contempt order entered by the

Mobile Juvenile Court ("the juvenile court") in an action commenced by

H.M.F., Jr. ("the father"). The mother argues that there was insufficient

evidence to support the juvenile court's implicit finding that she had

willfully failed or refused to comply with an order of the juvenile court. We agree, and we therefore reverse the contempt order.

Procedural History

In September 2023, the father filed a motion titled "Motion to modify/motion for Contempt" ("the September 2023 motion"). Based on allegations in the September 2023 motion, it appears that the juvenile court entered an order in 2021 that had awarded the mother and the father joint legal custody of the child and that had awarded the mother sole physical custody of their child. The 2021 order is not included in the record on appeal. In the September 2023 motion, the father alleged that the mother had interfered with his visitation rights, and he requested makeup visitation times and an order holding the mother in contempt.

In March 2024, the father filed a motion ("the March 2024 motion") requesting emergency pendente lite custody of the child. In that motion, the father alleged that the mother was living with the child's maternal grandfather and that the maternal grandfather had been arrested for a domestic-violence incident, in which the mother was a victim. The juvenile court held a hearing on the March 2024 motion, and, on April 1, 2024, entered an order that, among other things, awarded the father

2

physical custody of the child pendente lite, awarded the mother visitation, and prohibited contact between the child and the maternal grandfather. The juvenile court's April 1, 2024, order provides, in pertinent part: "The maternal grandfather is to have no contact with the minor child."

On July 28, 2025, the juvenile court set the matter for an emergency hearing to occur on August 12, 2025. The purpose of the hearing was to consider "the sole issue of whether [the mother] ha[d] allowed contact between the child and [the] maternal grandfather."

The juvenile court held a hearing to consider that issue on August 12, 2025, and entered the contempt order on August 14, 2025. (C. 117). In the contempt order, the juvenile court found the mother to be in contempt of court "for allowing the minor child around the maternal grandfather." As a sanction for contempt, the juvenile court modified the mother's visitation.

The mother filed a motion to alter, amend, or vacate directed to the contempt order on August 27, 2025, and filed a notice of appeal on September 19, 2025. On September 29, 2025, the mother filed a motion to stay, which the juvenile court granted on October 2, 2025.

### The Evidence

The mother testified that, in 2025, the child's maternal grandmother was providing day care for the child over the summer while the mother was at work. The father's testimony was consistent with the mother's testimony on this point; he testified that the mother had told him that either the maternal grandmother or the child's maternal uncle watched the child over the summer. The mother testified that the maternal grandmother would provide day care by coming to the mother's apartment to watch the child. There was no testimony that the maternal grandfather lived with the mother. The mother testified that she had informed the maternal grandmother that the child was not allowed to be in contact with the maternal grandfather.

The father testified that he had subpoenaed records from Dave and Buster's, which is a restaurant, for records generated on May 28, 2025. The mother testified that the request for the subpoena was filed on June 8, 2025. The father testified that the subpoenaed records contained pictures of the child, the maternal uncle, the maternal grandmother, and the maternal grandfather together at Dave and Buster's. The father testified that the mother was not in the pictures subpoenaed from Dave

and Buster's, and there was no testimony indicating that the mother was at Dave and Buster's on May 28, 2025.

The mother testified that she learned about the Dave and Buster's visit between the child and the maternal grandfather when she received a notice about the June 8, 2025, subpoena of the records from that restaurant. The mother testified that she had called the maternal uncle about the incident and that the maternal uncle had informed her that he was not aware that the child could not be around the maternal grandfather. The mother testified that the maternal uncle was in town visiting on that date and had not been providing day care for the child. The mother further testified that she had confronted the maternal grandmother about her having allowed the child to be around the maternal grandfather at Dave and Buster's and that the maternal grandmother had expressed regret at having betrayed the mother's trust.

The mother testified that, in light of the incident at Dave and Buster's, she had  enrolled the child in a Montessori school on June 12, 2025, after having received notice about the incident on June 8, 2025. The father testified that the mother had enrolled the child in day care on or about June 12, 2025.

5

The mother testified that, after she learned about the incident, the maternal grandmother had not been allowed to watch the child and that the maternal grandmother is no longer allowed to provide the child with day care. The mother testified that she was not aware of any incident other than the Dave and Buster's incident in which the child was exposed to the maternal grandfather, and the father did not testify about any incident in which the child was around the maternal grandfather, other than the Dave and Buster's incident.

## Standard of Review

> "The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court's contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence."

Poh v. Poh, 64 So. 3d 49, 61 (Ala. Civ. App. 2010).

## Analysis

The mother initially raises the issue whether the juvenile court found the mother to be in criminal contempt or in civil contempt. Civil contempt and criminal contempt have different burdens of proof. Compare Lester v. Lester, 378 So. 3d 555, 564 (Ala. Civ. App. 2022)(holding that the burden of proof in civil-contempt cases is clear and

convincing evidence), with <u>Ex parte Ferguson</u>, 819 So. 2d 626, 629 (Ala. 2001)(holding that the burden of proof in criminal-contempt cases is beyond a reasonable doubt). The clear-and-convincing-evidence burden of proof is a lesser standard of proof than the beyond-a-reasonable-doubt burden. See generally Ala. Code 1975, § 25-5-81(d) ("Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."). Accordingly, the success of an argument directed at the sufficiency of the evidence to support a trial court's judgment could turn on the type of contempt -- civil or criminal -- at issue.

Both constructive civil contempt and constructive criminal contempt, however, require a determination that the person willfully failed or refused to comply with a court order. See Rule 70A(a)(2)(C)(ii), Ala. R. Civ. P. (defining constructive criminal contempt, in pertinent part, as "[w]illful disobedience or resistance" to a court order); Rule 70A(a)(2)(D)(defining constructive civil contempt, in pertinent part, as "willful, continuing failure or refusal ... to comply with a court's ... order"); <u>Carnes v. Carnes</u>, 82 So. 3d 704, 715 (Ala. Civ. App. 2011). And

7

the mother argues that, regardless of whether the contempt order found her to be in civil or criminal contempt, there was insufficient evidence to demonstrate her willfulness under either standard. We agree.

Even when applying the clear-and-convincing-evidence burden of proof, there was insufficient evidence for the juvenile court to have reasonably found that the mother willfully violated its order prohibiting contact between the child and the maternal grandfather. "Willful" means:

> "1. Done wittingly or on purpose, as opposed to accidentally or casually; voluntary and intentional, but not necessarily malicious • The word connotes blameworthiness. A voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong. The term <u>willful</u> is stronger than <u>voluntary</u> or <u>intentional</u>; it is traditionally the equivalent of <u>malicious</u>, <u>evil</u>, or corrupt."

<u>Black's Law Dictionary</u> 1922 (12th ed. 2024).

In this case, there is no evidence indicating that the mother directly exposed the child to the maternal grandfather or exercised "inexcusable carelessness" leading to the child's exposure to the maternal grandfather by the maternal grandmother. With respect to whether the mother intentionally exposed the child to the maternal grandfather, there is no evidence indicating that the mother directed or caused the maternal

8

grandmother to bring the child to see the maternal grandfather. The mother was not pictured at Dave and Busters, and there was no testimony indicating that the mother was aware that that event would take place or had allowed it to happen.

With respect to whether the mother exercised inexcusable carelessness, the mother had the maternal grandmother come to the mother's apartment to provide day care. There was no evidence indicating that the maternal grandfather was present or lived at the mother's apartment. And the mother informed the maternal grandmother that the child was not allowed to visit with the maternal grandfather. There is likewise no evidence indicating that the mother was aware that the maternal grandmother would take the child to visit with the maternal grandfather or had caused the child to visit with the maternal grandfather in the past.

Based on the evidence before it, the juvenile court could not have reasonably found that there was clear and convincing evidence that the mother had willfully disobeyed or refused to comply with the juvenile court's order.

## Conclusion

9

The evidence does not support the juvenile court's contempt finding.

The contempt order is therefore reversed, and the cause is remanded.

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.